RETAIL CLERKS INTERNATIONAL
ASSOCIATION LOCAL NO. 455,
AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

RETAIL CLERKS UNION, LOCAL NO.
560 RETAIL CLERKS INTERNA-
TIONAL ASSOCIATION, AFL–CIO,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 74–1208, 74–1209.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 9, 1975.

Decided Feb. 4, 1975.

Carl L. Taylor, Washington, D. C., with whom Irwin H. Socoloff, Washington, D. C., was on the brief, for petitioners. George R. Murphy, Washington, D. C., also entered an appearance for petitioners.

Judith P. Wilkenfeld, Atty., N. L. R. B., with whom John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John D. Burgoyne, Atty., N. L. R. B., were on the brief, for respondent.

Before BAZELON, Chief Judge, ROBB, Circuit Judge, and PARKER,* District Judge for the United States District Court for the District of Columbia.

BAZELON, Chief Judge:

Since 1963 Local 455 of the Retail Clerks Union and the grocery stores of the Kroger Company in southern Texas have agreed to collective bargaining contracts which include a so-called "additional store clause." Under such clauses [1] the employer agrees to recognize the Union as the bargaining agent for the employees in any stores added to the originally certified bargaining unit after the making of the contract. In Local 455's case, the original unit consists of all Kroger stores in the Company's "Houston Division" which are in the state of Texas. In early 1972, Kroger for administrative reasons transferred two stores from its non-unionized "Dallas Division" into the "Houston Division." On March 22, 1972, the Retail Clerks requested recognition from the Company as the bargaining agent of the employees of those stores on the basis of the "additional store clause" and also proffered concededly valid union authorization cards from a majority of the employees in those two stores. The Company refused to recognize the Union first stating that it did not believe the Union had a majority in the two stores and later arguing that the two stores should be a separate bargaining unit outside of the multi-store "Houston Division" unit. On March 30, 1972 the Company filed representation petitions before the Labor Board seeking a Board-conducted election to determine majority status in the two stores. As is often the case in labor disputes of this ilk, the Union quickly followed with a § 8(a)(5) charge, a charge which in the Board's view takes precedence over the election petition and indeed caused the Regional Director to dismiss the election petition.[2]

A similar chain of events occurred in Pocatello, Idaho. During 1971 contract negotiations with the Pocatello Multiemployers Bargaining Association, Local 560 of the Retail Clerks Union was able to obtain agreement to an "additional store clause." A few weeks before the Association and Union agreed to a new contract, Smith's Management Corporation, an Association member, purchased an independent grocery—Frazier's Market—and authorized the Association to represent it in bargaining with respect to Frazier's. Smith's did sign the agreed-to contract, but only after striking the words "and future" from the "additional store clause" mentioned above and here set out in the margin.[3]

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The Kroger contract read:

 The Union shall be the sole and exclusive bargaining agent for all employees employed by the Houston Division of Kroger Food Stores in stores operating in the State of Texas, excluding all persons employed in the meat departments. . . .

2. See National Labor Relations Act § 8(a)(5), 29 U.S.C. § 158(a)(5) (1970) which proscribes an employer's illegal refusal to bargain with a union. Before Bernel Foam Prods. Co., 146 N.L.R.B. 1277 (1964), the union was required to choose between an election petition and a § 8(a)(5) charge, but Bernel Foam overruled that practice.

3. The contract read:

 The employer hereby recognizes the . . . Union . . . as the sole and exclusive bargaining agent, for all employees of the employer employed in the

After Board proceedings, described in more detail below, on June 29, 1972 the Board ordered Smith's to sign the negotiated contract.

On March 28, 1972 Smith's opened Mark-It, a new Pocatello store. On July 17 the Union requested recognition in Mark-It on the basis of the "additional store clause" and also proffered concededly valid union authorization cards from a majority of the new store's employees.[4] Smith's refused to recognize the Union and filed a petition for a Board-conducted election. The Union, of course, responded with a § 8(a)(5) charge and the case moved on to the Board.

In both the Kroger case and the Mark-It case, the Board found that the employer was under no obligation to recognize and bargain with the Union and thus did not violate § 8(a)(5).[5] The Board's reasoning was that the "additional store clauses" involved in the two cases did not manifest a complete "waiver" of the employer's right to petition the Board for an election. This right is guaranteed by the NLRA[6] and is buttressed by Labor Board policy on recognition on the basis of authorization cards. The latest incarnation of this shifting policy came in Linden Lumber Div., Summer & Co., 190 N.L.R.B. 718 (1971), rev'd sub nom. Local 413, Truck Drivers v. NLRB, 159 U.S.App.D.C. 228, 487 F.2d 1099 (1973), reinstated sub nom. Linden Lumber Div., Summer & Co. v. NLRB, 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974). There the Board held that the employer had no obligation to recognize a union on the basis of authorization cards unless there is an agreement between the parties on an alternative means for resolving the question of recognition.[7] In the Kroger case, the Board held that Linden Lumber's language on voluntary agreement referred only to agreement after the relevant employees had been determined and not to agreement as to future employees whose identity is not yet known.[8] The Board thought it proper to use this authorization card policy to interpret the "additional store clause" in the absence of the above-mentioned complete "waiver" of the employer's rights under that policy.

In two cases decided after Linden Lumber but before the instant cases, the Board held that "additional store clauses" were a legal subject of bargaining. Smith's Management Corporation[9] involved the previously mentioned Smith's Frazier's Market. There the Board held that the employer could not refuse to sign a collective bargaining agreement which contained an "additional store

---

employer's present and future retail food stores situated within the area of Pocatello, Idaho and immediate vicinity except: [three listed exceptions].

There is no dispute that the additional stores involved in this suit are covered by these contract clauses.

4. Retail Clerks representation of Frazier's Market employees is not in dispute in this case.

5. Houston Div., Kroger Co., 208 N.L.R.B. No. 122 (1974); Smith's Management Corp. d/b/a Mark-It Foods, 208 N.L.R.B. No. 123 (1974). In these opinions the Board conceded the validity of the authorization cards proffered by the two union locals.

A predicate for the Board's decision which is not challenged by either party is that the additional stores "may constitute a separate appropriate [bargaining] unit", Melbet Jewelry Co., 180 N.L.R.B. 107, 110 (1969). The implicit holding is that neither the Melbet Jewel-

ry holding nor the holdings in the instant cases are applicable if new employees, covered by an "additional store clause" or a clause similar in nature are added or "accreted", as the Board calls it, to an existing unit in a form which would not be under any circumstances a separate appropriate unit. The object of the Board's concern is apparently the case where the employer simply hires additional employees for an existing store or other bargaining unit.

6. § 9(c)(1)(B), 29 U.S.C. § 159(c)(1)(B) (1970).

7. See Mike Vela, Sr. d/b/a R & M Electric Supply Co., 200 N.L.R.B. No. 59 (1972), applying the Linden Lumber decision.

8. In so holding, the Board interpreted one of the more ambiguous old chestnuts in the authorization card field, Snow & Sons, 134 N.L.R.B. 709 (1961), enforced, 308 F.2d 687 (9th Cir. 1962), as permitting only such post hoc agreements.

9. 197 N.L.R.B. 1156 (1972).

clause." In *White Front Stores* [10] the Board held, as one ground for decision, that a union did not violate § 8(b)(2) [11] when it applied economic pressure on an employer to obtain recognition when the employer had agreed to an additional store clause and the union presented valid authorization cards from a majority of the relevant employees. In both these cases the Board made its holding contingent upon a sufficient presentment of majority support for the union such that the employer would not violate § 8(a)(2) by recognizing the union. [12]

The Board in the Kroger case, and by implication in the Mark-It case, purported to reaffirm *Smith* and *White Front Stores.* However, at a minimum the Board must admit that it has altered the holdings of those two cases. In the instant cases the Board not only requires a sufficient presentment of majority support for the union to avoid § 8(a)(2) problems but further requires specific evidence that the employer has "waived" resort to Board election procedures. We would be inclined to affirm even this *sub silentio* modification if we were convinced that the Board's "waiver" argument is sound. However, we think it is not and on that ground reverse the Board's determination in these two cases.

 The Board's "waiver" argument in couched in terms of contract interpretation. Though we recognize that it is interpretation with an eye to existing

labor policy, a certainly permissible practice, it is interpretation nevertheless. The Board's argument to the extent it relies on contract interpretation alone, and not enunciation of policy, is entitled to no particular deference. [13] The problem with the Board's suggested interpretation is illumined by the following question: if the "additional store clauses" involved in these cases do not constitute a "waiver" of the employer's right to a Board-conducted election, what do they mean? The Board's opinion in the Kroger case suggests that an "additional store clause" would be permissible if it specifically described a recognition procedure other than a Board ordered election. But this simply restates the question. What ambiguity is there in the present clauses which suggests that present clauses do not specify that some, indeed, any method other than a Board ordered election of recognition is agreeable to the parties?

 The answer to the question is that the "additional store clause" can have no purpose other than to waive the employer's right to a Board ordered election. If the clause is "interpreted" to permit the employer to petition for a Board election, then the clause means nothing to the union. The union and the employer have under the NLRA a right to seek an election. They do not need a contract clause to grant them . that right. [14] It follows that if the clause is

---

**10.** Local 870, Retail Clerks, 192 N.L.R.B. 240 (1971).

**11.** 29 U.S.C. § 158(b)(2) (1970).

**12.** This is the principle of Melbet Jewelry Co., 180 N.L.R.B. 107 (1969) which has been often approved. *See* Sperry Systems Mgmt. Div. v. NLRB, 492 F.2d 63 (2d Cir.), cert. denied sub nom. Local 445, Electrical Workers v. Sperry Systems Mgmt. Div., 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974); Boire v. International Bhd. of Teamsters, 479 F.2d 778, 795–97 (5th Cir. 1973); Sheraton-Kauai Corp. v. NLRB, 429 F.2d 1352 (9th Cir. 1970); Local 919, Retail Clerks v. NLRB, 135 U.S.App.D.C. 103, 416 F.2d 1118 (1969); NLRB v. Sunset House, 415 F.2d 545 (9th Cir. 1969); Spartans Industries v. NLRB, 406 F.2d 1002 (5th Cir. 1969).

**13.** *See* NLRB v. Universal Services, Inc., 467 F.2d 579, 584 n. 5 (9th Cir. 1972); L. Jaffe, Judicial Control of Administrative Action 549–50 (1965).

**14.** Houston Div., Kroger Co., 208 N.L.R.B. No. 122 (1974), Joint App. at 39 (Members Fanning & Jenkins, dissenting): "If the majority's interpretation of these clauses means that the employer can voluntarily recognize the Union or demand an election, then such an interpretation renders these clauses totally meaningless and without effect, for the Unions need no contract authorization to establish their representation status in a Board-ordered election."

While the Board does not raise the point, it could be argued that these clauses are saved from complete oblivion by an interpretation which gives the Union a right to require the

interpreted to permit the employer to petition for an election, the clause is a nullity since it permits the employer to do what he could do without a contract. We conclude that the "additional store clauses" involved here can only be interpreted to mean that the employer waives its right to a Board ordered election.[15] The specific non-election recognition procedures which the clauses permit is a matter for the parties to consider in the first instance and we express no opinion whether authorization cards or other procedures may be utilized or objected to consistent with the clauses in issue here.[16]

■ A careful reading of the Board's opinion in the Kroger case suggests that the true purpose of the ruling was not to interpret the contract but to declare that "additional store clauses" are inconsistent with authorization card policy and, therefore, illegal. Both in its opinion and at oral argument, the Board intimates that authorization cards (and perhaps other non-election recognition procedures) are insufficiently reliable and inherently coercive of the § 7 rights of employees and that any employer agreement in advance to recognize on the basis of such procedures is not

*employer* to petition for an election, a right which the Unions do not have under present authorization card practice founded in *Linden Lumber.* However, nothing in the record indicates that *Linden Lumber* was considered by the parties in formulating the contract clauses in issue here and the employers who certainly would make this contention if it had been contemplated have not suggested the point either before the Board or on appeal. Furthermore, as noted the Board did not rely on this point. We thus do not think the clause can be so interpreted.

**15.** It is a settled rule of contract interpretation that contract language should not be interpreted to render the contract promise illusory or meaningless. *See* Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1131 (3d Cir. 1969); Cordovan Assoc., Inc. v. Dayton Rubber Co., 290 F.2d 858, 861 (6th Cir. 1961); Gray v. Travelers' Indemnity Co., 280 F.2d 549, 552 (9th Cir. 1960); J. C. Millet Co. v. Distillers Distributing Corp., 258 F.2d 139, 142 (9th Cir. 1958). The interpretation suggested by the Board would clearly make the employer's promise illusory since it would make compliance with the clause dependent on the "mere will or inclination of the promisor." Eastern Transportation Co. v. Blue Ridge Coal Corp., 159 F.2d 642, 643 (2d Cir. 1947). Illusory promises are, of course, not enforceable. The Board's view of the "additional store clause" thus renders it legally unenforceable. It is certainly true that in interpreting contracts, the interpreter should avoid that view which will violate the law. *See* Perry Coal Co. v. NLRB, 284 F.2d 910, 914 (7th Cir. 1960), mod. denied, 291 F.2d 126, cert. denied, 366 U.S. 949, 81 S.Ct. 1903, 6 L.Ed.2d 1242 (1961). However, in this case there is neither an ambiguity sufficient to bring into play this rule of construction nor is there a determination by the Board that the Unions' view which we accept here is contrary to public policy. It follows from this

discussion that the "additional store clause" was a "clear and unmistakeable" waiver of the employers' rights to a Board conducted election. *See* Office and Professional Employees Union v. NLRB, 136 U.S.App.D.C. 12, 419 F.2d 314, 321 (1969); International Union, Auto Workers v. NLRB, 127 U.S.App.D.C. 97, 381 F.2d 265, 267 (D.C.Cir.), cert. denied, 389 U.S. 857, 88 S.Ct. 82, 19 L.Ed.2d 122 (1967). Here, as noted, we have more than "contract silence", International Tel. & Tel. v. NLRB, 382 F.2d 366, 373 (3d Cir.), cert. denied, 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 829 (1967); NLRB v. Perkins Machine Co., 326 F.2d 488, 489 (1st Cir. 1964); rather we have a specific contract clause which is rendered illusory unless deemed a "waiver."

Counsel for the Board at oral argument suggested that the "additional store clause" was really an agreement as to the appropriate bargaining unit. However, it is absolutely clear that the Board and the Board alone has the power under the Act to designate appropriate bargaining units. NLRA § 9(b), 29 U.S.C. § 159(b) (1970). While the Board may defer to arbitration on the issue of accretion to an existing unit, both the Board and the courts have required that any award be consistent with Board bargaining unit policy. *See* Boire v. International Bhd. of Teamsters, 479 F.2d 778, 794–95 (5th Cir. 1973) and authorities cited. In any event, an agreement on the issue of accretion (and hence on the issue of the appropriate unit) is really an agreement by the employer to recognize the union without an election and thus, to be nonillusory, must require the employer to recognize outside of the Board election processes.

**16.** In this case neither the Board nor the employer voiced any concern with recognition other than through a Board conducted election. We thus limit our decision to a holding that the "additional store clause" does not permit resort to a Board conducted election.

permissible.[17] The Supreme Court in *Linden Lumber* clearly avoided this issue[18] and this intimated position would have to confront the legislative history which indicates that Congress intended to permit non-election recognition procedures.[19] But we are not prepared to state that this position is so unreasonable that the Board should be ordered instanter to find Kroger and Smith's in violation of § 8(a)(5). Rather we decide to remand the cause to the Board. If it wishes to overtly advance the position we suggest above, it should over-rule *White Front Stores* and *Smith's Management Corporation* and explicate why national labor policy requires that "additional store clauses" be held illegal. But the Board may not attempt, as it has done here, to accomplish this result through a process of statutory construction which purports to uphold the legality of "additional store clauses" while silently nullifying them.[20] We, therefore, reverse the Board's decisions in these two cases and remand for proceedings consistent with this opinion.

So ordered.

17. For a discussion of the dangers to § 7 rights involved in the use of authorization cards, *see* Note, Union Authorization Cards: Linden's Peacemaking Potential, 83 Yale L.J. 1689, 1698–1707 (1974) and authorities collected. The most obvious danger is that described by counsel for the Board in response to a question from Judge Robb: with cards, the potential union member hears only one side of the story while in an election he or she will hear two or more sides.

18. Linden Lumber Div., Summer & Co. v. NLRB, 419 U.S. 301, 95 S.Ct. 429, 434 n. 9, 42 L.Ed.2d 465 (1974).

19. *See* Local 413, Truck Drivers v. NLRB, 159 U.S.App.D.C. 228, 487 F.2d 1099, 1106–07, (1973), rev'd sub nom. Linden Lumber Div., Summer & Co. v. NLRB, 419 U.S. 301, 95 S.Ct. 429, 435, 42 L.Ed.2d 465 (1974) (*Stewart*, J. dissenting).

20. We further note that the Board's interpretation process in this case shows insufficient regard for the integrity of collective bargaining agreements, a most basic policy of the national labor law. *See* § 301 of the NLRA, 29 U.S.C. § 185(a) (1970); S.Rep.No.105, 80th Cong., 1st Sess. 15–18 (1947); *cf.* Danielson v. Painters Dist. Council No. 20, 305 F.Supp. 1108, 1115 (S.D.N.Y.1969).