**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**RETAIL CLERKS LOCAL 588, RETAIL CLERKS INTERNATIONAL ASSOCIATION, AFL–CIO, Respondent.**

No. 77–1791.

United States Court of Appeals, Ninth Circuit.

Dec. 11, 1978.

Elliott Moore, David Zorensky, Atty., N.L.R.B., Washington, D.C., for petitioner.

David J. Salniker, Berkeley, Cal., for respondent.

Before ANDERSON and HUG, Circuit Judges, and REAL,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

After a hearing the National Labor Relations Board (the Board) found that respondent union, Local 588 of the Retail Clerks Ass'n, and the employer, Raley's, Inc., violated the Act [1] when Raley's recognized and bargained with Local 588. Raley's has agreed to comply with the Order; only Local 588 is a party to this enforcement proceeding. The Board's Order, reported at 227 N.L.R.B. # 109, is premised on the fact that another union, the Independent Drug Clerks Ass'n (IDCA), already represented Raley's drug store employees. Respondent contends (1) the IDCA was not a lawful majority union at the time, and (2) the controverted employees were properly accreted to the unit then represented by respondent.

Both of respondent's contentions are unavailing. We enforce the Board's Order.

I. FACTS SUMMARIZED

Raley's has 23 food stores in California, 13 of which are attached to Raley's drug centers. The drug centers are in the same building, but have separate entrances and checkout counters. Raley's has operated the drug centers as separate entities with respect to costs, payroll, management, merchandising, etc. For many years, respondent has represented foodstore employees while drug employees were represented by the IDCA.

Twice respondent has sought to represent the drug clerks, but lost both elections to the IDCA. Except for these two instances, Raley's has separately recognized each union when it opened a combined food and drug center. The contracts with each union include union security clauses and a new stores clause.

Raley's opened a new facility in Auburn, California, in which the drug center and foodstore are more integrated. There are common entrances and checkouts and no partitions between the respective areas. Raley's, however, still manages the two operations separately. The cosmetic changes were implemented to increase traffic between the two areas and reduce duplication of stock.

Prior to its opening, the IDCA requested that pursuant to the existing contract only IDCA members, or those eligible for IDCA membership, be employed at the Auburn

---

* The Honorable Manuel L. Real, United Sates District Judge for the Central District of California, sitting by designation.

1. The National Labor Relations Act, Sections 8(b)(1)(A) & (2), 29 U.S.C. § 158(b)(1)(A) & (2).

drug center. Raley's labor chief, James Teel, did not reply, but when the Auburn store opened in October 1975, eight of ten drug center employees were IDCA members or had applied for membership.

Respondent then demanded to represent all Auburn employees in a storewide unit. Raley's at first resisted, but then signed a cross-check agreement whereby the desires of the employees would be ascertained by counting the membership and application cards in a storewide unit. Since foodstore personnel had also been hired pursuant to a new stores clause and they outnumbered drug center employees, it was a foregone conclusion that respondent would become the sole bargaining representative of all employees at the Auburn store.

Respondent's position is that a single storewide unit is the only appropriate unit once the store format was altered. The contractual basis for respondent's position is the new stores clause which, respondent asserts, has legitimatized the accretion of all Auburn store employees into the existing multi-foodstore unit.

## II. ANALYSIS

### A. Recognition of IDCA

■ If the IDCA had been properly recognized as exclusive bargaining representative of the Auburn store's drug employees, their ouster through the cross-check election in an expanded unit would clearly violate the Act, 29 U.S.C. § 158(b)(1)(A) & (2). *See, e. g., NLRB v. Seine and Line Fishermen's Union of San Pedro,* 374 F.2d 974, 977–78 (CA 9 1967), *cert. denied,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 261 (1967). In fact, recognition of a minority union will always be an unfair labor practice by both the union and the employer, even though no other union has been recognized or commands a majority. *International Ladies' Garment Workers Union v. NLRB,* 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961).

■ Here, the record amply supports the Board's conclusion that IDCA was recognized by Raley's as representative of the Auburn drug employees and, in fact, enjoyed majority support. It was only after the IDCA had been recognized and assumed its duties as bargaining representative that respondent demanded and obtained recognition. By demanding recognition when another union's claim "raises 'a real question concerning representation,'" the union demanding recognition commits an unfair labor practice. *NLRB v. Fishermen's & Allied Workers' Union, Local 33,* 483 F.2d 952 (CA 9 1973).

### B. Respondent's Defenses

1. IDCA's majority was coerced.

All parties proceeded on the assumption that employees of any new store should simply be accreted to the respective multistore units in accordance with the existing contracts. This, of course, denies employees of a new store their freedom of choice, for an election is never held. New store employees are simply subsumed into the larger unit without anyone ascertaining whether they desire union representation, and if so, whether they desire to join the larger unit. The new stores clauses were relied on to justify this practice.

■ The courts have frowned on this contractual usurpation of § 7 rights. *E. g., Boire v. Int'l Bro. of Teamsters,* 479 F.2d 778 (CA 5 1973). Since contract rights cannot exist independent of the union's right to represent the unit, the new stores clause cannot bind the new employees despite the employer's acquiescence. *Local 7–210, Oil, Chemical and Atomic Workers v. Union Tank Car Co.,* 475 F.2d 194 (CA 7 1973), *cert. denied,* 414 U.S. 875, 94 S.Ct. 68, 38 L.Ed.2d 120 (1973).

Board policy has been to deny efficacy to such clauses, and this court has explicitly approved this policy. *E. g., Sheraton-Kauai Corp. v. NLRB,* 429 F.2d 1352 (CA 9 1970).[2] Thus, when a new store is opened, union

**2.** The most such clauses do is waive the employer's absolute right to demand an election; instead the employer must accept alternative methods of proving majority support. *Retail Clerks Int'l Ass'n, Local 455 v. NLRB,* 166 U.S. App.D.C. 422, 510 F.2d 802 (1975).

representation cannot be forced on the new employees; they must be allowed to decide their own representation. *NLRB v. Sunset House,* 415 F.2d 545 (CA 9 1969). Employee freedom of choice will be denied only when the new employees have no separate identity from employees in the existing unit, *NLRB v. Security-Columbian Banknote Co.,* 541 F.2d 135 (CA 3 1976): that is, when the new store cannot itself constitute an appropriate unit.[3] Presumptively, a new store can constitute an appropriate unit, and consequently the new employees should rarely be accreted to the existing unit. *Sheraton-Kauai Corp. v. NLRB, supra.* Of course, the new employees can choose, through an election or more informal methods, to join the existing unit.

Thus, respondent argues that, by enforcing the new stores clause when hiring drug employees at the Auburn location, Raley's (and IDCA) violated Board policy favoring freedom of choice over accretion, and that this nullifies the IDCA card majority and its recognition by Raley's. In *Sheraton-Kauai, supra,* this court held that union authorization cards obtained pursuant to a new stores clause that also included a union shop proviso were invalid. Under such circumstances, coercion is inherent, the court said.

■ But even if we accept respondent's argument, it does not provide a defense to these charges. Respondent's majority among Auburn foodstore employees was obtained by enforcing its new stores clause. Thus, if respondent's contentions are correct, its majority among foodstore employees was also illegitimate because coerced. Consequently, its storewide majority, as evidenced by the cross-check "election," would also be invalid. By demanding recognition and executing a contract on behalf of employees it did not legitimately represent, respondent violated the Act even under its construction of the applicable law and facts. We do not hold that the IDCA majority was coerced or otherwise invalid; we hold only that if it were, respondent still committed the same unfair labor practices.

## 2. A unit of drug employees is inappropriate.

Respondent also contends that a unit of drug center employees was inappropriate and therefore any IDCA majority within the smaller unit could be ignored. Respondent's premise is wrong: the smaller unit is not of necessity inappropriate. Furthermore, the solution arrived at by Raley's and respondent—to overturn the two-unit system by imposing a storewide unit and the existing contract on all Auburn employees—ignores the rights of the employees and the Board's superior authority.

■ In determining an appropriate unit for bargaining under 29 U.S.C. § 159(a) & (b), several factors are weighed to determine whether there is a sufficient community of interest among the employees:

1. similarity in skills, interests, duties, and working conditions;
2. the employees' desires;
3. integration of personnel and functions;
4. bargaining history;
5. the employer's organizational structure; and
6. the extent of union organization.

American Bar Ass'n, *Developing Labor Law* 201 (C. Morris ed. 1971); *see NLRB v. Security-Columbian Banknote Co.,* 541 F.2d 135 (CA 3, 1976). There may be several appropriate units possible; unless the Board designation is clearly inappropriate, it will not be overturned. *NLRB v. Doctors' Hospital of Modesto, Inc.,* 489 F.2d 772, 776 (CA 9, 1973); *Banco Credito y Ahorro Ponceno v. NLRB,* 390 F.2d 110, 112 (CA 1, 1968), *cert. denied,* 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968).[4]

3. Here, we have a slight variation. The new store was to be divided into two units, instead of becoming one storewide unit. The materiality of this variation—i. e., whether two units are appropriate—is discussed *infra.*

4. Here, of course, the appropriateness of the unit is a finding which the Board's Order necessarily implies.

988

Applying the above criteria, we find this to be an appropriate unit, particularly because of the bargaining history and the employer's organizational structure.[5] The contention, pressed by respondent, that for retail stores only storewide units are appropriate is untrue. *E. g., Retail, Wholesale, and Dept. Store Union v. NLRB,* 128 U.S. App.D.C. 41, 385 F.2d 301 (1967) (non-selling employees, excepting office clericals, found to be an appropriate unit); *see Retail Clerks Local v. NLRB,* 565 F.2d 769 at 773–74 & n. 12; *NLRB v. Food Employers Council, Inc.,* 399 F.2d 501 (CA 9, 1968) (snack bar employees implicitly found to be an appropriate separate unit). The Board has not abused its discretion.

## III. THE REMEDY

The Board has wide discretion in formulating a remedy once an unfair labor practice has been proven. *See NLRB v. C & C Plywood Corp.,* 413 F.2d 112 (CA 9, 1969). We find no abuse of discretion here.

The Order is enforced.

---

**5.** Under the new single store format, the closer similarity in duties, etc., would justify finding a single unit to be preferable. *Retail Clerks Local 588 v. NLRB,* 565 F.2d at 774 n. 12. Yet this conclusion does not mean that two units are inappropriate. *Id.*