## LOCAL NO. 3–193 INTERNATIONAL WOODWORKERS OF AMERICA, Plaintiff-Appellant,

v.

## KETCHIKAN PULP COMPANY, Defendant-Appellee.

### No. 77–3057.

United States Court of Appeals, Ninth Circuit.

Jan. 21, 1980.

Herman L. Wacker, Vance, Davies, Roberts, Reid & Anderson, Seattle, Wash., for plaintiff-appellant.

Thomas S. Zilly, Lane, Powell, Moss & Miller, Seattle, Wash., on brief; Eugene R. Nielson, Seattle, Wash., for defendant-appellee.

Before CHAMBERS and TANG, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge:

This action was instituted in an Alaska Superior Court by Local 3–193 International Woodworkers of America (Union) versus Ketchikan Pulp Company (Ketchikan) to interpret and enforce Article I—a collective bargaining agreement between the parties which provided:

"During the life of this agreement, the Union shall be the sole collective bargaining agency for all production, booming and rafting, cookhouse, construction and maintenance employees of the Ketchikan Pulp Company in its logging operations in Southeastern Alaska; but excluding clerical and office employees, guards, profes-

---

\* Hon. Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation.

sional employees, supervisory employees; and the employer does hereby recognize such Union and the bargaining agency."

The action was removed by defendant to the United States District Court upon the assumption that the complaint stated a claim for relief under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

At the time the collective bargaining agreement between the Union and the employer was entered into, the employer operated one logging operation in Thorne Bay, Alaska.

During the life of the agreement, the employer acquired several other logging operations in Southeastern Alaska, but refused to recognize the Union as the representative of employees of those operations. These operations were geographically distinct, had no interchange of employees, and were autonomously operated by subsidiary corporations. Neither the Union nor Ketchikan sought relief from the National Labor Relations Board. The District Court found that the employees of the newly acquired operations were needed for a just adjudication under Fed.R.Civ.P. 19 (CT 173). Because appellant refused to amend its complaint to join the employees, the case was dismissed for failure to join indispensable parties. This was the sole ground for dismissal stated by the District Court in its written order dated July 25, 1977.

On appeal both parties agree that the District Court erred in basing its order of dismissal on the notion that the employees, or representatives of the employees, of the logging camps in dispute were indispensable parties to this litigation. This was an issue raised *sua sponte* by the District Court relying on *Culinary Workers & Bartenders Union Local 814 v. Salatich*, 318 F.Supp. 1047 (C.D.Cal.1970). While the cited case is in point, other precedents demonstrate that it does not represent the law in this Circuit. In *Retail Clerks Union Local 1222 v. Alfred M. Lewis, Inc.*, 327 F.2d 442 (9th Cir. 1964), the Court held that jurisdiction lies under Section 301 at the behest of the local union against the employer to enforce a cost-of-living wage adjustment section of a collective bargaining agreement for the benefit of all the union members, and that it was not, in essence, an effort to enforce individual wage claims, requiring the presence of individual union members as indispensable parties. The conclusion that individual union members affected by the dispute are not indispensable parties to a Section 301 action between the union and the employer was reaffirmed in *Fibreboard Paper Products Corp. v. East Bay Union of Machinists Local 1304*, 344 F.2d 300 (9th Cir.), *cert. denied*, 382 U.S. 826, 86 S.Ct. 61, 15 L.Ed.2d 71 (1965). See also: *Kaplan v. Int'l Alliance of Theatrical Employees*, 525 F.2d 1354 (9th Cir. 1975).

The relief sought by the Union as expressed in the prayer of the complaint is:

"1. An order of this court declaring that Article I of the Labor Agreement between the parties means that plaintiff is the bargaining agent for the employees of all logging companies owned by defendant in Southeastern Alaska.

"2. That plaintiffs be awarded damages for their loss of initiation fees and dues from employees of Ketchikan Pulp Company, engaged in logging outside of the Thorne Bay camp in Southeastern Alaska."

The Union promptly moved for partial summary judgment for a declaration in conformity with its first prayer. Ketchikan countered with a motion for summary judgment supported by affidavits and contended that the undisputed material facts showed that the logging operations outside of the Thorne Bay camp were not covered by the labor agreement under the doctrine of accretion.

Although the Union argued the principle of accretion before the District Court, its basic claim is that this is strictly an action under Section 301 to construe and enforce a collective bargaining agreement and that the doctrine of accretion is totally irrelevant.

On appeal a jurisdictional issue has also been posed. Citing *West Point-Pepperell,*

*Inc. v. Textile Workers Union,* 559 F.2d 304 (5th Cir. 1977), it is suggested that the District Court lacked jurisdiction under Section 301 because the issue here is in reality a representational issue, not a contract issue, and the National Labor Relations Act vests exclusive authority in the NLRB to pass on questions of representation. Neither party agrees with this contention. The Union argues that all it wants the Court to do is declare the meaning of the plain language of the contract, taken by its four corners, and that it has jurisdiction under Section 301 to do so. If, after such a declaration, either party commits what may arguably be deemed an unfair labor practice, appropriate complaints may be filed with the NLRB. On the other hand, Ketchican points to *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964) as direct authority that the federal courts have jurisdiction under Section 301 to enforce the arbitration clause of a collective bargaining agreement even if the contract issue to be interpreted involved a question of representational status. Ketchikan argues that we should accept jurisdiction and decide the accretion issue on the merits because neither party has seen fit to invoke the primary jurisdiction of the NLRB. Ketchikan argues that in the light of *Carey* (supra) if arbitrators have the right to consider representation issues, a district court has the same power in an action under Section 301 when the collective bargaining agreement contains no arbitration clause. In the words of Judge Browning (*Bartenders & Culinary Workers Union Local 340 v. Howard Johnson Co.,* 535 F.2d 1160, 1163 (9th Cir. 1976)), "There is no incisive response, in purely conceptual terms, to this argument." Nevertheless, we think the Supreme Court has made it fairly clear in subsequent cases that a decisive factor in the *Carey* case was the very strong policy favoring the invocation of arbitration to resolve all kinds of labor disputes under collective bargaining agreements providing for arbitration. Justice Douglas said in part: "The superior authority of the Board may be invoked at any time. Meanwhile the therapy of arbitration is brought to bear in a complicated and troubled area." *Carey,* 375 U.S. at 272, 84 S.Ct. at 409. When it is clear under the facts of the particular case that the thrust of the Section 301 action is to impose the terms of a collective bargaining agreement upon an employer who was not a party to it, did not assume it and could not by operation of law be equitably charged with responsibility for it, the action must fail. *Howard Johnson Co. v. Detroit Local Jt. Exec. Bd., Hotel Employees Union,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *Bartender & Culinary Workers Union Local 340 v. Howard Johnson Co.* (supra). It is also established that a Section 301 action will lie to enforce a no-strike clause of a contract, and this despite the fact that the claim might also be processed as an unfair labor practice before the NLRB. *William E. Arnold Co. v. Carpenters Dist. Council,* 417 U.S. 12, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974). A lockout, which also may give rise to an unfair labor practice charge, is fair meat for a Section 301 breach of contract charge. *Smith v. Evening News Ass'n,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

But there is a critical difference between an unfair labor practice charge and the basic policy of the National Labor Relations Act vesting primary (if not exclusive) jurisdiction in the NLRB in two decisive areas of labor-management relations: (1) the designation of an exclusive bargaining agent, and (2) identification of an appropriate collective bargaining unit under Section 9 of the Labor Management Relations Act (29 U.S.C. § 159). The Fifth Circuit in *West Point-Pepperell, Inc. v. Textile Workers,* supra; and in *Nat'l Ass'n of Women's and Children's Apparel Salesmen, Inc. v. FTC,* 479 F.2d 139 (5th Cir.), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240 (1973), has proclaimed NLRB jurisdiction to be exclusive, citing *NLRB v. Cabot Carbon Co.,* 360 U.S. 203, 79 S.Ct. 1015, 3 L.Ed.2d 1175 (1959). We cannot read *Cabot Carbon* as supporting this conclusion, particularly in the light of *Carey,* supra, which recognizes arbitration as an appropriate alternative process for the resolution of representation

issues. It is, nevertheless, evident from the precedents that there is a very, very strong policy of self-determination using the procedures vested in the NLRB under our National Labor Relations Act for the promotion of industrial peace, and while contracted for arbitration is a useful and viable alternative to the same end, it should be observed that *Carey* (supra) itself recognized the superior authority of the Board.

Undoubtedly in recognition of this conception of congressional policy, the labor bar has processed almost all representation problems administratively through the NLRB, and such problems have been given judicial attention through review of NLRB action. For examples: *NLRB v. Cabot Carbon Co.*, supra; *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); *NLRB v. Local 103, Int'l Ass'n of Bridge Workers*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978); *South Prairie Constr. Co. v. Local 627, Int'l Union of Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976); *NLRB v. Retail Clerks Local 588*, 587 F.2d 984 (9th Cir. 1978); *NLRB v. Hosp. & Inst'l Workers Union, Local 250*, 577 F.2d 649 (9th Cir. 1978); *Sheraton-Kauai Corp. v. NLRB*, 429 F.2d 1352 (9th Cir. 1970); *NLRB v. Food Employers Council, Inc.*, 399 F.2d 501 (9th Cir. 1968); *Westinghouse Elec. Corp. v. NLRB*, 440 F.2d 7 (2d Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 93, 30 L.Ed.2d 93 (1971); *Retail Clerks Int'l Ass'n, Local 455 v. NLRB*, 166 U.S.App.D.C. 422, 510 F.2d 802 (D.C.Cir.1975).

The issues in the present case involve problems of self-determination in representation and of identification of the appropriate bargaining unit. These same issues, including questions of successor employers and of accretion to existing bargaining units have been thoroughly canvassed in the cases cited, which are merely samples of the myriad of precedents available.

We think the action of the Supreme Court in *South Prairie Const. Co.* (supra) is particularly illuminating. The headnote accurately summarizes the facts and ruling.** In its opinion the Court stated:

"In foreclosing the Board from the opportunity to determine the appropriate bargaining unit under § 9, the Court of Appeals did not give 'due observance [to] the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution.' *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 141, 60 S.Ct. 437, 440, 84 L.Ed. 656, 661 (1940)."

*Id.* 425 U.S. at 806, 96 S.Ct. at 1845.

This declaration of the strong policy of judicial deference to initial determination by the NLRB of representation issues is equally applicable to actions under Section 301. In the present case the Union is attempting an end run around Section 9 of the Act and under the guise of contract interpretation wants to avoid self-determination of a bargaining agent by a substan-

---

** Respondent union filed a complaint with the National Labor Relations Board alleging that two highway contractors (South Prairie and Kiewit), the wholly owned subsidiaries of another corporation, had committed an unfair labor practice in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act by refusing to apply to South Prairie's employees the collective-bargaining agreement between the union and Kiewit, that South Prairie and Kiewit constituted a single 'employer' under the Act for purposes of applying the agreement, and that hence under § 9 of the Act South Prairie was obligated to recognize the union as the bargaining representative of its employees. The NLRB held that South Prairie and Kiewit were separate employers and dismissed the complaint. But the Court of Appeals held that South Prai-

rie and Kiewit were a 'single employer,' that their combined employees constituted the appropriate bargaining unit under § 9, and that therefore they had committed an unfair labor practice as charged, and remanded the case to the NLRB for enforcement of an order. Held: The Court of Appeals invaded the NLRB's statutory province when it proceeded to decide the § 9 'unit' question in the first instance, instead of remanding the case to the NLRB so that it could make the initial determination. Since the selection of an appropriate bargaining unit lies largely within the discretion of the NLRB, whose decision, if not final, is rarely to be disturbed, the Court of Appeals' function ended when the NLRB's error on the 'single employer' issue was 'laid bare.' 425 U.S. at 801, 96 S.Ct. at 1842.

tial number of employees and determination of an appropriate bargaining unit by the NLRB, which has primary authority in this area. This cannot be countenanced. Although we have disagreed with the District Court that these difficulties can properly be solved under the rubric of "indispensible parties", we do agree with the reasoning that led him to that conclusion. The proposition that this large number of employees in dispersed logging camps may properly be incorporated into the Thorne Bay bargaining unit *vi et armis* and without voice in the matter is absolutely untenable.

Also pertinent to the issues in this case is the decision in *Linden Lumber Division v. NLRB*, 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974). In that case the employer had refused to recognize the petitioning union as the collective bargaining agent for the employees. The union presumably had obtained card authorization from a majority of the employees, but the employer questioned this claim. The holding of the Court is summarized in the final paragraph.

> "In sum, we sustain the Board in holding that, unless an employer has engaged in an unfair labor practice that impairs the electoral process, a union with authorization cards purporting to represent a majority of the employees, which is refused recognition, has the burden of taking the next step in invoking the Board's election procedure."

*Id.* at 310, 95 S.Ct. at 434.

The case is relevant to an interpretation of the clause in the instant contract upon which the Union relies: that is, that the Union shall be the sole collective bargaining agent for Ketchikan's logging camp employees in Southeastern Alaska. The problem of bringing unrepresented employees under the umbrella of an existing agreement was involved in *N. L. R. B. v. Food Employer's Council, Inc.*, 399 F.2d 501 (9th Cir. 1968). There our Court enforced a Board order that the employees in question were not accreted to the existing unit, and took the occasion to observe:

> "In situations in which complex and difficult factual determinations are necessary, however, it would seem advisable—and not unduly burdensome—for unions such as the respondent here to resolve close questions concerning the extension of bargaining agreements in favor of proselytizing the employees in question rather than seeking to represent them through the fait accompli of accretion. We frown upon the 'successful coup' technique. Cf. *Retail Clerks Union, Local 770 v. NLRB*, 370 F.2d 205, 208 (9th Cir. 1966)."

*Id.* at 505, n. 1. Later the District of Columbia Court of Appeals had before it *Retail Clerks Int'l Ass'n, Local 455 v. N.L.R.B.*, 166 U.S.App.D.C. 422, 510 F.2d 802 (D.C.Cir. 1975) for interpretation of a contract clause which recognized the union as the exclusive bargaining agent for all employees of the employer's present and future retail food stores. The Board found that the employer was under no obligation to bargain with the union respecting a new store, despite the fact that concededly valid union authorization cards were proffered for a majority of the new employees. The Court reversed and said:

> "The answer to the question is that the 'additional store clause' can have no purpose other than to waive the employer's right to a Board ordered election. If the clause is 'interpreted' to permit the employer to petition for a Board election, then the clause means nothing to the union. The union and the employer have under the NLRA a right to seek an election. They do not need a contract clause to grant them that right. It follows that if the clause is interpreted to permit the employer to petition for an election, the clause is a nullity since it permits the employer to do what he could do without a contract. We conclude that the 'additional store clauses' involved here can only be interpreted to mean that the employer waives its right to a Board ordered election. The specific non-election recognition procedures which the clauses permit is a matter for the parties to consider in the first instance and we express no opinion whether authorization cards or

other procedures may be utilized or objected to consistent with the clauses in issue here."

We return to the Ninth Circuit and consider the effect of the decision in *NLRB v. Retail Clerks Local 588*, 587 F.2d 984 (9th Cir. 1978). This case involved the interpretation and application of new stores clauses in contracts negotiated by competing unions. Our Court very carefully reviewed the legal effect of such a contract as applied to a new location and new employees and in footnote 2 approved the District of Columbia's interpretation (supra). The Court said:

"All parties proceeded on the assumption that employees of any new store should simply be accreted to the respective multi-store units in accordance with the existing contracts. This, of course, denies employees of a new store their freedom of choice, for an election is never held. New store employees are simply subsumed into the larger unit without anyone ascertaining whether they desire union representation, and if so, whether they desire to join the larger unit. The new stores clauses were relied on to justify this practice.

"*The courts have frowned on this contractual usurpation of § 7 rights.* E. g., *Boire v. Int'l Bro. of Teamsters*, 479 F.2d 778 (CA 5 1973). Since contract rights cannot exist independent of the union's right to represent the unit, the new stores clause cannot bind the new employees despite the employer's acquiescence. *Local 7–210, Oil, Chemical and Atomic Workers v. Union Tank Car Co.*, 475 F.2d 194 (CA 7 1973), cert. denied, 414 U.S. 875, 94 S.Ct. 68, 38 L.Ed.2d 120 (1973).

"Board policy has been to deny efficacy to such clauses, and this court has explicitly approved this policy. E. g., *Sheraton-Kauai Corp. v. NLRB*, 429 F.2d 1352 (CA 9 1970). Thus, when a new store is opened, union representation cannot be forced on the new employees; they must be allowed to decide their own representation. *NLRB v. Sunset House*, 415 F.2d 545 (CA 9 1969). Employee freedom of choice will be denied only when the new employees have no separate identity from

employees in the existing unit, *NLRB v. Security-Columbian Banknote Co.*, 541 F.2d 135 (CA 3 1976): that is, when the new store cannot itself constitute an appropriate unit. Presumptively, a new store can constitute an appropriate unit, and consequently the new employees should rarely be accreted to the existing unit. *Sheraton-Kauai Corp. v. NLRB*, supra. Of course, the new employees can choose, through an election or more informal methods, to join the existing unit." (Emphasis supplied)

*Id.* at 986–87. In *Sheraton-Kauai Corporation v. NLRB*, 429 F.2d 1352, 1357 (9th Cir. 1970), the Court stated: "But neither the Board's discretion under section 9(b), nor the employees' right of self-determination under section 7, can be limited by contract between a union and employer."

 In sum we conclude that Congress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units. The court does have jurisdiction to interpret Article I of the labor agreement between these parties. If it was the intention of the parties that said agreement be determinative of the appropriate bargaining area and unit, as applied to the independent logging camps (employees) outside Thorne Bay, Alaska, it is illegal and unenforceable. If it was the intention of the parties that said agreement be authority for the plaintiff to act as the collective bargaining agent for employees in logging camps outside Thorne Bay, Alaska, it is illegal and unenforceable. The sole operative effect, outside Thorne Bay, Alaska, of Article I of the agreement is to waive Ketchikan's right to demand an election as a method of proving majority support.

The judgment dismissing the action for lack of indispensable parties is reversed and the action is remanded for further proceedings not inconsistent with this opinion.