## INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 613, Plaintiff–Appellant,

v.

## FOWLER INDUSTRIES, INC., Fowler Electric Co., Inc., Steve Fowler Electrical Contractors, Inc., Clark Electrical Contractors, Inc., Samuel Lewis Fowler, Defendants–Appellees.

No. 88–8644.

United States Court of Appeals, Eleventh Circuit.

Sept. 25, 1989.

Rehearing and Rehearing In Banc Denied Nov. 14, 1989.

Frank B. Shuster, Blackburn, Shuster, King and King, Atlanta, Ga., for plaintiff-appellant.

Ira J. Smotherman, Jr., Stokes, Shapiro, Fussell & Wedge, Atlanta, Ga., for defendants-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Plaintiff–Appellant International Brotherhood of Electrical Workers, Local Union 613 (the Union) brought this action against Samuel Lewis Fowler (Fowler), Fowler Industries, Inc. (FI), Fowler Electric Co., Inc. (FEC), Steve Fowler Electrical Contractors, Inc. (SFEC), and Clark Electrical Contractors, Inc. (CEC) under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (1982), alleging that defendants had breached a prehire agreement executed in 1962 between the Union and FEC and that Fowler, FI, SFEC, and CEC had tortiously interfered with the contract and with the Union's business. The district court granted defendants' motion to dismiss the action for lack of subject matter jurisdiction. We reverse.

## I. BACKGROUND

For many years, Fowler owned and operated FEC as a union shop performing electrical subcontracting services in the Atlanta area.[1] In April of 1983, Fowler created two new corporations, FI and SFE. Like FEC, SFE is an electrical subcontracting company. FI, a holding company to which FEC transferred all its tools and equipment, now owns 100% of the stock of both FEC and SFE as well as 49% of the stock of CEC, another electrical subcontracting

---

1. Fowler first executed a prehire agreement with appellant Union, which represents electrician craftsmen in the Atlanta area, in 1962. Thereafter, Fowler and the Union executed successive labor agreements, the most recent of which was in effect when the Union filed this action. During the entire period from 1962 through the present, FEC has paid its employees wages and benefits fixed by the prehire agreement.

business.[2]

Of the three subcontracting firms, only FEC operates as a union shop. The Union's complaint alleges that the failure of SFE and CEC to pay union scale and to provide other benefits prescribed by the prehire agreement constitutes a breach of that agreement, because SFE and CEC, although not signatories to the agreement, are bound to its terms as subentities of a "single employer" or as "alter egos" of FEC.[3] In support of its claim for breach of the agreement, the Union alleges that twenty-three former employees of FEC were transferred to FI or SFE, that at least some of FEC's customers have become customers of SFE, that all appellees occupy building space FEC occupied alone prior to April of 1983, that FI now rents to both the union (FEC) and non-union (SFE &

CEC) shops the tools and equipment formerly owned by FEC, that FI provides FEC, SFE and CEC with identical bookkeeping, accounting, data processing, payroll, and billing services as well as insurance advice, that FEC, SFE and FI file consolidated tax returns, that money is advanced between the corporations on an as-needed basis, that loans among the companies are not memorialized by formal agreements, that Fowler, as the lone stockholder of FI, is solely responsible for naming the boards of directors of FI, FEC and SFE, and that Fowler effectively controls CEC, as its majority shareholder, Leonard Clark, can neither issue checks on the CEC account without the countersignature of a Fowler family member nor bid on projects in excess of $25,000.00 without Fowler's approval. The Union also complains that Fowler, FI, SFE and CEC have tortiously

2. CEC was formed in July of 1983. Fifty-one percent of its stock is owned by Leonard Clark, who is not a party to this litigation.

3. As the Fifth Circuit observed in *Carpenters Local 1846 v. Pratt–Farnsworth, Inc.,* 690 F.2d 489 (5th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983),

> [t]he single employer doctrine is a creation of the Board which allows it to treat two or more related enterprises as one employer within the meaning of section 2(2) of the NLRA, 29 U.S.C. § 152(2). Often the doctrine is invoked to combine the amount of business of two or more employers so that the whole will exceed the Board's self-imposed jurisdictional minimum.... The doctrine is not, however, limited to use only as a jurisdiction tool. The finding that two entities are a single employer may have the consequence of treating them as one for purposes of considering the existence of an unfair labor practice in a proceeding before the Board.... The factors which the Board uses to determine the existence of single employer status are (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership.

690 F.2d at 504 (citations omitted). In determining whether single employer status exists, however,

> no one of the [foregoing] factors is controlling, *NLRB v. Welcome–American Fertilizer Co.,* 443 F.2d 19, 21 (9th Cir.1971), nor need all criteria be present. Single employer status ultimately depends on "all the circumstances of the case" and is characterized as an absence of an "arm's length relationship found among unintegrated companies." *Local 627, International Union of Operating Engineers v.*

*NLRB,* 171 U.S.App.D.C. 102, 107, 108, 518 F.2d 1040, 1045–46 (1975), *aff'd on this issue sub nom., Southern Prairie Construction Co. v. Local 627, International Union of Operating Engineers,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976).

*NLRB v. Don Burgess Const. Corp.,* 596 F.2d 378, 384 (9th Cir.), *cert. denied,* 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979).

The "alter ego" doctrine, which differs slightly from the "single-employer" theory, often applies when ownership of an employer changes hands:

> Although a bona fide successor is not in general bound by a prior collective bargaining agreement, an alter ego will be so bound.... This is because an employer will not be permitted to evade its obligations under the NLRA by setting up what appears to be a new company, but is in reality a "disguised continuance" of the old one....
>
> In deciding whether a company is an alter ego, the Board will often look to factors which bear some similarity to those involved in a single employer question; in particular, whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership.... However, the focus of the alter ego doctrine, unlike that of the single employer doctrine, is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations.... Further, an alter ego case frequently contains specific findings on the substantial continuity of the work force from the union to the non-union employer.

*Pratt–Farnsworth,* 690 F.2d at 507–08 (citations omitted).

interfered with its business and with its contract with FEC.

Appellees moved to dismiss the complaint or, alternatively, for summary judgment, asserting that, even if the Union's "single employer" and "alter ego" claims are meritorious, enforcement of the prehire agreement against SFE and CEC is proper only after a determination by the NLRB that the combined work forces of FEC, SFE and CEC constitute the appropriate unit for collective bargaining under the LMRA. Appellees also argued that the state law, tortious-interference claims were preempted by section 301 and, alternatively, that, as pendent state-law claims, they should be dismissed along with the federal-question "single employer" and "alter ego" claims. The district court granted the motion to dismiss, concluding that the determination of the appropriate bargaining unit under the LMRA was an essential element of the Union's "single employer" and "alter ego" claims, that such a determination was within the exclusive jurisdiction of the NLRB, and that the court would have subject matter jurisdiction of the Union's claims only after a determination of the appropriate bargaining unit by the NLRB.

## II. DISCUSSION

■ Section 8(f) of the NLRA, 29 U.S.C. § 158(f) (1982), "allows construction industry employers and unions to enter into agreements setting the terms and conditions of employment for the workers hired by the signatory employer without the union's majority status first having been established" under section 9 of the NLRA. *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 266, 103 S.Ct. 1753, 1756, 75 L.Ed.2d 830 (1983); *see also Plumbers and Pipefitters Local Union 72 v. John Payne Co.*, 850 F.2d 1535, 1539 (11th Cir.1988). Although execution of a section 8(f) prehire agreement gives a union signatory neither the right to picket in order to compel a construction industry employer to negotiate, *NLRB v. Local Union No. 103, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978), nor the right to maintain an action for recognition as the exclusive bargaining representative for a group of employees, *Local No. 3–193, Int'l Woodworkers of America v. Ketchikan Pulp Co.*, 611 F.2d 1295 (9th Cir.1980); *NLRB v. Don Burgess Const. Corp.*, 596 F.2d 378 (9th Cir.), *cert. denied*, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979); *Local 627, Int'l Union of Operating Engineers v. NLRB*, 518 F.2d 1040 (D.C.Cir.1975) *rev'd on other grounds sub nom., South Prairie Const. Co. v. Local 627, Int'l Union of Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976), until the union achieves majority status in an appropriate collective-bargaining unit, a union signatory may enforce the economic terms of a voluntarily executed prehire agreement in an action under section 301(a), regardless of the union's majority status. *Jim McNeff*, 461 U.S. at 269, 103 S.Ct. at 1758. Accordingly, we have held that an NLRB determination of the appropriate collective-bargaining unit is not a prerequisite to a signatory union's section 301 action to enforce the economic terms of a prehire agreement. *John Payne*, 850 F.2d at 1537 (disposition of union's suit to enforce monetary obligations incurred by construction industry employer under prehire agreement "would not require the district court to decide any representational issues, or other LMRA questions, that fall within the primary jurisdiction of the NLRB").

■ Against this background, the Union makes two arguments. First, citing *Jim McNeff*, the Union contends that the district court erred by concluding that a determination of the appropriate collective bargaining unit is a prerequisite to this action. Alternatively, the Union argues that, even if determination of the appropriate collective bargaining unit is necessary, the district court erred by holding that it has no jurisdiction to make that determination. For this proposition, the Union cites *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.*, 690 F.2d 489, 521 (5th Cir.1982) ("[W]here [a unit determination] is essential to the disposition of contractual rights in a section 301 action ..., a district court has the power to decide it, at least in

the absence of a previous or pending determination by the [NLRB]."), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). Because we agree with the Union's first contention, we need not address the second.

In *Jim McNeff*, a construction subcontractor signatory to a union's master labor agreement failed to make contractually required contributions to the union's fringe benefit trust funds. The trustees sued under section 301, and the subcontractor argued that the contract was not enforceable unless and until the union demonstrated majority status in an appropriate bargaining unit. A demonstration of majority status, of course, would have necessitated a determination of the appropriate bargaining unit.

Rejecting the subcontractor's argument, the Supreme Court noted a "critical distinction" between section 301 actions to enforce prehire agreements and those seeking recognition of the union as the exclusive bargaining representative of a group of employees. 461 U.S. at 267, 103 S.Ct. at 1757. Unlike attempts to compel negotiations, an action to enforce a voluntarily executed prehire agreement, the Court observed, does not impinge upon the representational interests of the defendant's employees:

> Union enforcement, by way of a § 301(a) suit, of monetary obligations incurred by an employer under a prehire contract prior to its repudiation does not impair the right of employees to select their own bargaining agent.... [E]nforcement of accrued obligations in a § 301 suit does not mean that the union represents a majority of the employer's employees. In a § 301 suit, the District Court merely enforces a contract entered into by the employer—a contract that Congress has legitimated to meet a special situation even though employees themselves have no part in its negotiation or execution. Such enforcement does not grant the plaintiff union a right otherwise enjoyed only by a majority union except in the very narrow sense, expressly intended by Congress, that employers and minority unions in the construction industry do not violate the Act

by entering into prehire agreements. There is no sense in which respondents' contract action has a recognitional purpose....

103 S.Ct. at 1758. The Union contends, as we held in *John Payne, supra*, that this language makes clear that a determination of the appropriate collective bargaining unit is not a prerequisite to a section 301 suit to enforce an employer's monetary obligations under a prehire agreement.

Finding the Union's reliance on *Jim McNeff* inapposite, the district court stressed that, in *Jim McNeff* the Supreme Court held only that monetary obligations assumed under a prehire agreement "are enforceable as to the *signatory* parties to that agreement without a showing of majority support for the union." (emphasis added). Attempting to distinguish *Jim McNeff*, the district court reasoned that "[i]n *Jim McNeff*, unlike the present action, *there was no question of who was bound* by the prehire agreement, and there was *no attempt by the union to expand the unit* beyond the employees of the signatory employer." (emphasis added). This language indicates to us that the district court misperceived both the significance of the Union's legal theory and the effect of this litigation upon SFE's and CEC's employees.

The Union argues that FI, SFE and CEC are bound to the terms of the prehire agreement by virtue of their status as subentities of a "single employer" (FEC) that indisputably *is* a signatory to the agreement. Alternatively, the Union argues that FI, SFE and CEC are bound as "alter egos" of FEC. The Union requests only a declaration that FI, SFE and CEC are so bound and an order directing their performance. We see no significant distinction between this contract action and that for payments to a fringe benefit trust in *Jim McNeff*. As in *Jim McNeff*, the Union does not claim to be entitled to compel FI, SFE and CEC to negotiate or to execute a new prehire agreement. Nor does the Union seek a declaration that it is the exclusive collective bargaining representative of any of appellees' employees. Instead, the Union seeks only a determination that the four corporate defendants are in fact a

"single employer" that has breached a valid prehire agreement. The requested determination requires nothing more than an interpretation of the contract language in light of federal law governing "single employer" and "alter ego" status. If the Union prevails on the merits of either its "single employer" or its "alter ego" claim, the contract language itself will determine the employees to whom FI, SFE and CEC owe the pay and benefits specified by the agreement. Therefore, no unit determination is logically necessary.

Neither is a unit determination necessary to vindicate national labor policy, for, contrary to the district court's perception, enforcement of the prehire agreement against FI, SFE and CEC will not erode the section 7 representational rights of their employees. Assuming (as we must at this stage) the validity of the Union's legal theory, the employees of SFE and CEC already are covered by the prehire agreement. The Union is seeking merely to enforce its contract with respect to all the employees working for what the Union contends is a single employer. Thus, an order requiring FI, SFE and CEC to abide by the agreement will not expand the reach of the agreement or that of the Union. Indeed, the district court's contrary conclusions follow only if one assumes that the corporate defendants are *not* a single employer—that is, only if one ignores the rule governing evaluation of motions to dismiss for lack of subject matter jurisdiction and assumes the *in*validity of the Union's legal theory.

Viewed in the proper light, the enforcement of the agreement against all appellees does not implicate the representational desires of any of the appellees' employees, who remain free to petition for and to elect an exclusive representative pursuant to section 9 of the LMRA. Therefore, under the reasoning of *Jim McNeff,* no determination of majority status in an appropriate bargaining unit is required in this case.[4]

Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED to that court for further proceedings consistent with this opinion.

---

**4.** We realize that our holding is directly contrary to that of *Pratt–Farnsworth,* in which the new Fifth Circuit held that enforcement of the economic terms of a prehire agreement against a non-signatory subentity of a single employer

requires a showing that the two subentities are a single employer and then requires a further *independent* determination that their employees constitute an appropriate bargaining unit.... The decision that the employees of the two subentities constitute an appropriate unit is ... crucial to liability under the single employer theory ... [and] ... cannot be disguised in contractual garb but must be encountered head-on as a bona fide representational issue.

690 F.2d at 520–21. Each of the cases principally relied upon by the *Pratt–Farnsworth* panel, *Don Burgess, Ketchikan,* and *South Prairie,* however, involved a union's claim to be the *collec-*

*tive bargaining representative* of the employees of a non-signatory subentity of a "single employer" signatory to a prehire agreement. Given the Supreme Court's admonitions in *Jim McNeff* that "[t]here is a critical distinction between an employer's obligation under the Act to bargain with the representative of the majority of its employees and its duty to satisfy lawful contractual obligations that accrued after it enters [sic] a prehire contract," 103 S.Ct. at 1757, and that "monetary obligations assumed by an employer under a prehire contract may be recovered in a § 301 action brought by a union prior to the repudiation of the contract, even though the union has not attained majority support in the relevant unit," 103 S.Ct. at 1759, we doubt the continuing vitality of *Pratt–Farnsworth* in the context of § 301 actions to enforce the economic terms of prehire agreements. Thus, we decline to follow that decision.