UNITED FOOD & COMMERCIAL WORKERS UNION, LOCALS 197, 373, 428, 588, 775, 839, 870, 1119, 1179 AND 1532 chartered by UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, Petitioners-Appellees,

v.

ALPHA BETA COMPANY, Respondent-Appellant.

No. 82–4718.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1983.

Decided July 10, 1984.

As Amended Sept. 10, 1984.

Russell Richeda, Bunch & Andrews, San Francisco, Cal., for petitioners-appellees.

Henry Telfeian, McLaughlin & Irvin, San Francisco, Cal., for respondent-appellant.

Before TANG, SWYGERT,* and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Ten locals of an international labor union filed a petition to compel arbitration of a dispute with an employer concerning the meaning and effect of a provision in their collective bargaining agreements. The dis-

* Honorable Luther Merritt Swygert, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

puted provision requires the employer to continue to make trust fund contributions on behalf of employees who initially work within the bargaining unit but are subsequently transferred to a newly opened store outside the unit. The district court, 550 F.Supp. 1251 (D.C.Cal.1982), granted the petition to compel arbitration. The employer, alleging primarily that the provision is contrary to law and public policy, appeals. We hold that the disputed provision is susceptible to interpretation in a manner that would render it lawful. We affirm.

## FACTS

Alpha Beta Company operates a chain of retail supermarkets. Alpha Beta and ten locals of the United Food and Commercial Workers International Union, AFL–CIO (Local Unions), entered into a series of collective bargaining agreements covering the existing stores within the geographical jurisdiction of the respective Local Unions.

Under the agreements, numerous trust funds that provide health and welfare, pension, and vacation benefits to the employees, were created. The agreements provide that:

> Notwithstanding any language to the contrary contained in this Agreement ..., it is agreed that this Agreement shall have no application whatsoever to any new food market or discount center until fifteen (15) days following the opening to the public of any such new establishment.... The Employer shall staff such new or reopened food market with a combination of both current employees and new hires.... *Employees, who are thus transferred, upon whom contributions are made to the various trust funds shall continue to have contribu-*

> *tions to the several trust funds made on their behalf in the same manner and in the same amount per hour as such contributions were made prior to their transfer.* (emphasis added).[1]

In 1981, Alpha Beta opened a new store in Pinole, California, within the geographical jurisdiction of one of the petitioners.[2] About 30 employees, all of whom were represented by one of the Local Unions at the time, were transferred to the Pinole store from stores covered by the collective bargaining agreements. Prior to their transfer Alpha Beta had made trust fund contributions on behalf of those employees, as required by the agreements.

The Local Unions claimed that Alpha Beta was required, by virtue of the collective bargaining agreements, to continue to make the trust fund contributions on behalf of the employees transferred to the Pinole store. Alpha Beta disagreed. The parties were unable to settle their differences. The Local Unions sought to submit the dispute to arbitration in accordance with the arbitration provisions of the collective bargaining agreements. Alpha Beta refused to do so. Under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1976), the Local Unions petitioned the district court to compel arbitration. Following a motion for summary judgment by the Local Unions, the district court granted the petition. Because the district court's granting of a petition to compel arbitration under a collective bargaining agreement is a final decision under 28 U.S.C. § 1291 (1976), *Goodall-Sanford, Inc. v. United Textile Workers*, 353 U.S. 550, 551–52, 77 S.Ct. 920, 920–21, 1 L.Ed.2d 1031 (1957), we have jurisdiction over this appeal.[3]

---

1. For purposes of clarity, we hereinafter refer to the entire contract clause as the "clause" and to the last sentence of the quoted clause (emphasized in quote) concerning trust fund contributions as the "provision."

2. On appeal, Alpha Beta contends that the new store is not operated by Alpha Beta alone, but is jointly operated with another company. *See* p. 1376 & note 6 *infra.*

3. In *Goodall-Sanford,* the Supreme Court held that, because enforcement of the arbitration clause was the "full relief sought" in the district court, the grant of a petition to compel arbitration was a final decision under 28 U.S.C. § 1291, and thus appealable. 353 U.S. at 551–52, 77 S.Ct. at 920–21. We recognize that permitting a party who wishes to avoid its obligation to arbitrate to appeal an order compelling arbitration helps to frustrate the policy favoring

## ARBITRABILITY OF THE DISPUTE

Alpha Beta makes two substantive arguments in support of vacating the arbitration order. First, Alpha Beta argues that the collective bargaining agreements do not provide for arbitration of the particular dispute at issue. Second, it argues that the provision of the contract requiring continued contributions is contrary to law and public policy. In addressing both arguments, we must keep in mind the teachings of the Supreme Court's famous *Steelworkers Trilogy*, which strongly endorses the national labor policy favoring informal resolution of labor disputes through arbitration.[4]

### 1. *Arbitration of the Dispute under the Collective Bargaining Agreement*

██ When faced with a petition to compel arbitration, a court must decide whether the collective bargaining agreement provides for arbitration of the particular dispute. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964); *Alpha Beta Co. v. Retail Store Employees Union Local 428*, 671 F.2d 1247, 1250 (9th Cir.1982). However,

[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. *It is confined to ascertaining whether the party seeking arbi-*

tration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.

*United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960) (emphasis added).

██ There is a strong presumption that a collective bargaining agreement containing a customary arbitration clause provides for arbitration of the dispute at issue: "An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) (emphasis added; footnote omitted); *e.g., Brannon v. Warn Bros., Inc.*, 508 F.2d 115, 119 (9th Cir.1974). In light of this strong presumption, we consider whether the agreements before us provide for arbitration of this dispute.

██ The relevant agreement provides for the arbitration of disputes "involving or arising out of the meaning, interpretation, application or alleged violation of [the] Agreement."[5] Alpha Beta argues that, be-

---

the speedy resolution of labor disputes through arbitration. *See* Cox, *Reflections upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1517–18 (1959) (recognizing that one of the greatest advantages of arbitration is speedy resolution of labor disputes); *see also Alascom, Inc. v. ITT North Electric Co.,* 727 F.2d 1419, 1422 (9th Cir.1984) (citing cases recognizing that a denial of a stay of arbitration was not a final order under § 1291 because of "the baneful effect that permitting appeals from orders denying stays would have upon one of the supposed advantages of arbitration—speed"). The normal course of the appellate process may result in the delay of arbitrations for long periods of time. Such delays significantly undermine the usefulness of arbitration clauses and are contrary to the national labor policy favoring arbitration. Nevertheless, Congress has not yet acted to remedy this anomaly. For a rule that precludes such pre-arbitral delays, see the California Arbitration Statute: an order granting a petition to compel arbitra-

tion is not appealable. Cal.Code Civ.Proc. § 1294 (1982); *see, e.g., La Pietra v. Freed,* 87 Cal.App.3d 1025, 1031, 151 Cal.Rptr. 554, 557 (1978).

**4.** *See United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *see also* LMRA § 203(d), 29 U.S.C. § 173(d) (1976) (declaring that informal means of resolving labor disputes is the "desirable method"). *See generally* R. Gorman, *Basic Text on Labor Law* ch. 23 (1976) (discussing arbitration under collective bargaining agreement).

**5.** The agreements contain two differently worded arbitration clauses. One provides that:

Upon the request of either party hereto, a Board of Adjustment shall be created ... for

cause the transferred employees are no longer in the collective bargaining unit and are no longer covered by the agreement, the dispute does not arise under the collective bargaining agreement. This argument is wholly without merit.

The disputed provision expressly states that Alpha Beta will continue to make trust fund contributions on behalf of employees transferred to new stores, i.e., stores outside the bargaining unit. The sole apparent purpose of the disputed provision is to impose an obligation on the employer to make contributions on behalf of employees at a time when they are no longer in the bargaining unit. The Local Unions now seek to enforce that contract obligation through the arbitral process. Alpha Beta's argument that the dispute is not arbitrable because the transferred employees are no longer in the bargaining unit misses the point entirely. The dispute obviously arises out of the collective bargaining

the purpose of passing on all claims, *disputes and grievances arising between the parties during the term of this Agreement over the construction and application of this Agreement,* or relating to working conditions arising out of this Agreement.... (emphasis added).
The other states that:
For the purpose of this Agreement, a grievance is a *dispute, difference of opinion between the parties, and grievances of employees involving or arising out of the meaning, interpretation, application or alleged violation of this Agreement, including the arbitrability of all such matters....* If by the end of the period for amicable adjustment no resolution has been made of the dispute, ... the asserting party [may] request arbitration by an impartial arbitrator. (emphasis added).
Neither party attaches any significance to the differences in language in these broadly worded arbitration clauses. We therefore apply the language of the more commonly used of the two clauses—the second. We note that the clause we apply expressly provides that an arbitrator is to decide whether a dispute is arbitrable under the agreement while the other does not. However, because the parties do not rely on or even refer to that express provision, we will not give it any weight here.

**6.** We note, however, that it is for the arbitrator to decide whether the Pinole store is a new store for purposes of the disputed contract provision. If Alpha Beta seriously pursues this point in arbitration, the arbitrator can decide whether the new store is operated by Alpha Beta and, if

agreement, and equally obviously involves the "interpretation" or "application" of a disputed provision of that agreement. Moreover, the dispute clearly involves an "alleged violation of [the] Agreement."

For the first time on appeal, Alpha Beta alleges that the Pinole store was not operated by Alpha Beta but was a joint venture between Alpha Beta and the Skaggs Drug Company; thus, according to Alpha Beta, a new entity, separate and independent from Alpha Beta, operated the new store. Therefore, the argument goes, the employees were "transferred" to a new employer. Alpha Beta now urges this point as an additional reason in support of its claim that the dispute did not arise under the collective bargaining agreement. Because Alpha Beta did not raise this point until appeal, we need not address it on the merits. *See, e.g., Komatsu, Ltd. v. States Steamship Co.,* 674 F.2d 806, 812 (9th Cir. 1982).[6]

not, whether the contract provision in dispute applies to new stores operated by a joint venture of which Alpha Beta is a principal participant.
If we were obligated to address the merits of Alpha Beta's argument, we might be unable to determine conclusively who operates the Pinole store because Alpha Beta did not raise any argument over ownership or operation in the district court and, consequently, there is no evidence in the record supporting the contention it raises on appeal. We do recognize, however, that there are strong indications that the Pinole store is operated in the same manner as every other Alpha Beta store. *See Los Angeles Marine Hardware Co. v. NLRB,* 602 F.2d 1302, 1305 (9th Cir.1979) (citing *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv., Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965)) (listing factors to consider in determining whether two divisions of a company are a single employer for purposes of the Labor Management Relations Act). For example, Alpha Beta exercised authority over the employees by transferring them to the Pinole store; there is no evidence suggesting that the employees volunteered to transfer to the Pinole store or knew (assuming that it were true) that the store was not operated by Alpha Beta. In addition, Alpha Beta's director of labor relations was in charge of the labor relations at the Pinole store. We note also that, in its answer to the petition filed in the district court, Alpha Beta refers to the Pinole store as "Alpha Beta's Pinole, California, store." Although there is some language in an Administrative Law

In summary, we find Alpha Beta's argument that the dispute does not fall within the terms of the collective bargaining agreement to be frivolous at best. We think it evident that the dispute involves or arises out of the interpretation, application or alleged violation of the collective bargaining agreements and is subject to arbitration.

2. *The Lawfulness of the Disputed Provision*

Alpha Beta argues that enforcement of the contract provision requiring continued contributions would infringe upon the Pinole employees' right to self-organization under section 7 of the Labor Management Relations Act (LMRA) (originally enacted as section 7 of the National Labor Relations Act), 29 U.S.C. § 157 (1976). Therefore, Alpha Beta contends, the provision is unlawful and the district court erred in compelling arbitration of a dispute arising under it. According to Alpha Beta, by seeking to enforce the disputed provision the Local Unions are attempting to unlawfully represent the employees at the Pinole store.[7]

We recognize that a court cannot compel arbitration if a contract clause on its face violates federal labor law or is contrary to federal labor policy. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 2183–86, 76 L.Ed.2d 298 (1983); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77, 83–84, 102 S.Ct. 851, 855, 859–60, 70 L.Ed.2d 833 (1982). However, a conflict between an arbitrator's decision and federal labor law "is necessarily speculative when the arbitrator has yet to rule." *Hospital & Institutional Workers Union Local 250 v. Marshal Hale Memorial Hospital*, 647 F.2d 38, 42 (9th Cir.1981); *see Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964). Such conflicts "can be resolved when they become manifest in an action to enforce the award. The mere possibility of conflict, however, is no barrier to arbitration." *Hospital & Institutional Workers*, 647 F.2d at 42 (citing *Carey v. Westinghouse Electric Corp.*, 375 U.S. at 272, 84 S.Ct. at 409).[8]

Thus, the Supreme Court has emphasized that:

> [w]hether or not the Union's demands have merit will be determined by the

---

Judge's opinion involving unfair labor practice charges against Alpha Beta that suggests that Alpha Beta did not operate the Pinole store, *see* notes 7 & 16 *infra*, we are in no way bound, or persuaded, by that dicta.

7. Alpha Beta has not challenged the contract clause as a whole in these proceedings. Rather, Alpha Beta claims only that the provision concerning trust fund contributions is unlawful. We therefore need not determine whether the clause as a whole is consistent with the employees' rights under section 7. However, we note that even if the clause were unlawful, the provision regarding trust fund contributions might be severable, and that it would be for the arbitrator, not the court, to decide whether such was the intent of the parties.

The contract clause as a whole was discussed in connection with one of the unfair labor practice charges against Alpha Beta decided by an Administrative Law Judge (ALJ) after the district court's memorandum and order. The ALJ held that the disputed clause was not a "new stores" clause. A "new stores" clause "waive[s] the employer's absolute right to demand an election; instead the employer must accept alternative methods of proving majority support."

*NLRB v. Retail Clerks Local 588*, 587 F.2d 984, 986 n. 2 (9th Cir.1978) (citing *Retail Clerks Int'l Ass'n, Local 455 v. NLRB*, 510 F.2d 802 (D.C.Cir. 1975)); *see Houston Div. of Kroger Co.*, 219 N.L.R.B. 388 (1975). Because he held that the clause was not a "new stores" clause, the ALJ concluded that Alpha Beta did not breach its duty to bargain by refusing to recognize Local 1179, the local union in whose geographic jurisdiction the Pinole store is located, as the bargaining representative of the Pinole store employees. The General Counsel of the NLRB has appealed the ALJ's decision on this issue. He contends that Alpha Beta is obligated to recognize Local 1179 as the bargaining representative of the Pinole store employees upon a showing by the Local Union that it represents a majority of the employees in that store. Although their understanding of the meaning of the clause differed, neither the ALJ nor the General Counsel concluded that it was unlawful.

8. *See also Sheet Metal Workers' Int'l Ass'n v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 483 (9th Cir.1983) ("The mere possibility of a conflict [with a pending National Labor Relations Board decision] is no barrier to enforcement of [an arbitration] award." (citation omitted)).

arbitrator in light of the fully developed facts. It is sufficient for present purposes that the demands are not so plainly unreasonable that the subject matter of the dispute must be regarded as nonarbitrable because it can be seen in advance that *no award* to the Union could receive judicial sanction.

*John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964) (emphasis added) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)).

We therefore need only decide whether an arbitrator could interpret the disputed contract clause in a manner that would render it lawful. Only if all possible interpretations of the contract provision would result in a conflict between that provision and the Pinole store employees' rights would arbitration be precluded.[9]

It is far from clear how Alpha Beta's contributions to the trust funds on behalf of the transferred employees would interfere with the self-organizational rights of those, or any other, employees. Under section 7 of the LMRA, employees in a new unit of an employer's business have the right to self-organization, to choose wheth-er to be represented by a union; they cannot be deprived of that right by the terms of a collective bargaining agreement. *See NLRB v. Retail Clerks Local 588,* 587 F.2d 984, 986–87 (9th Cir.1978); *Sheraton-Kauai Corp. v. NLRB,* 429 F.2d 1352, 1354 (9th Cir.1970).[10] A union also cannot compel an employer to bargain over the terms of employment for employees that it does not represent. *See Local No. 3–193 International Woodworkers v. Ketchikan Pulp Co.,* 611 F.2d 1295, 1298–99 (9th Cir.1980); *NLRB v. Retail Clerks Local 588,* 587 F.2d 984, 986–87 (9th Cir.1978); *see also NLRB v. Pacific Erectors, Inc.,* 718 F.2d 1459, 1462 (9th Cir.1983) ("It is an unfair labor practice for an employer to sign a collective bargaining agreement recognizing a minority union as an exclusive bargaining representative." (citations omitted)).

Here, the Local Unions are only attempting to require the employer to continue to make trust fund contributions on behalf of transferred employees. Contrary to Alpha Beta's contentions, the disputed provision does not accord the Local Unions representational rights over the employees at the Pinole store, directly or indirectly.[11]

Although Alpha Beta asserts that enforcement of the contributions provision

**9.** Although much deference is given to an arbitrator's decision, *see, e.g., Edna H. Pagel, Inc. v. Teamsters Local Union 595,* 667 F.2d 1275, 1278–79 (9th Cir.1982), a court would not enforce an arbitration award that is contrary to federal labor law or policy, *see W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); *Broadway Cab Cooperative, Inc. v. Teamsters & Chauffeurs Local Union No. 281,* 710 F.2d 1379, 1382–83 (9th Cir.1983). Similarly, because a National Labor Relations Board ruling would take precedence, *see Carey v. Westinghouse Elec. Corp.,* 375 U.S. at 272, 84 S.Ct. at 409, a court would refuse to enforce an arbitration award that conflicts with an NLRB decision, *see, e.g., Cannery Warehousemen, Food Processors, Drivers & Helpers for Teamsters Local Union #748 v. Haig Berberian, Inc.,* 623 F.2d 77 (9th Cir.1980).

**10.** For example, an employer and a union cannot agree to a provision that would, without any showing of majority interest, "accrete" a new part of the employer's business into the existing bargaining unit. Rather, the NLRB has stated that it violates § 7 to:

compel a group of employees, who may constitute a separate appropriate unit, to be included in overall unit without allowing those employees the opportunity of expressing their preference in a secret election or by some other evidence that they wish the Union to represent them.

*Melbet Jewelry Co.,* 180 N.L.R.B. 107, 110 (1969); *see Sheraton-Kauai Corp.,* 429 F.2d at 1354–56.

There is, however, a statutory exception to this general rule for the building and construction industry. Section 8(f) of the LMRA, 29 U.S.C. § 158(f) (1976) provides that it is not an unfair labor practice for an employer in the building and construction industries to make a "pre-hire" agreement that accords representational rights to a labor organization that has not yet demonstrated majority status. Such a statutory exception was thought to be required by the practical necessities of that industry.

**11.** There is, of course, no contention by Alpha Beta that the Local Unions did not have the legal right to bargain on behalf of the transferred employees at the time the agreement containing the disputed provision was entered into.

would interfere with the employees' right of self-organization, it never explains how or in what manner those rights would be affected. Ordinarily, the employer's payment of trust fund contributions for transferred employees under a pre-existing collective bargaining agreement would not seem to have any effect on the other employees' right to self-organization. As to the transferred employees, they have already been the beneficiaries of their unions' successful obtaining of benefits at their former work site. The abrupt termination of those protections might well have a far greater impact on the exercise of their self-organizational rights than would the continuation of those benefits. We see no merit to Alpha Beta's contention that the disputed provision demonstrates that the Local Unions "under the guise of contract interpretation [seek] to avoid self-determination of a bargaining agent by a substantial number of employees." *Local No. 3–193 International Woodworkers v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1299–1300 (9th Cir.1980).

The First Circuit Court of Appeals recently rejected an argument markedly similar to Alpha Beta's. In *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273 (1st Cir.1983), the collective bargaining agreement required the employer to give priority to employees who had been laid off from work in the bargaining unit when hiring for jobs in a unit not represented by the union. The employer argued that the contract provision violated the LMRA and therefore that an arbitration award based on that provision could not be enforced. By bargaining

to place its members in jobs outside the unit, the employer contended, "the Union ... illegally extended its representational rights beyond the bargaining unit it [was] certified to represent." *Id.* at 277. The First Circuit rejected this argument and held that the union attempted only "to obtain benefits for the employees it represents," rather than to represent employees outside the bargaining unit. *Id.* at 278; *see id.* at 277. We agree with the First Circuit's reasoning.

 By enforcing the disputed provision, the Local Unions, like the union in *Courier-Citizen*, are attempting only "to obtain benefits for the employees [they] represent[ ]." Here, the provision ensures that the transferred employees will continue to receive trust fund benefits. As the bargaining representative of the employees within the unit, the Local Unions bargained for the disputed provision in order to afford them certain protections should Alpha Beta decide to transfer them to a new store outside the unit. The Local Unions negotiated for that provision when the employees, who later were transferred, were still employed within the bargaining unit. The Local Unions thus seek only to enforce rights of transferred employees—rights that arose under an agreement in force at their initial place of work.[12]

The disputed provision is similar in important respects to a variety of clauses in collective bargaining agreements that provide for the payment of benefits to employees who retire, quit or are discharged—clauses that require the payment of retirement, pension, severance, unemployment

---

**12.** In arguing that the disputed provision is unlawful, Alpha Beta relies upon a Second Circuit Court of Appeals' decision which held that a union committed an unfair labor practice by seeking to enforce an arbitration award that applied an *entire* collective bargaining agreement to employees it *never* represented in a new facility of the employer when those employees had not shown majority support for the union. *Sperry Systems Management Div. v. NLRB,* 492 F.2d 63 (2d Cir.), *cert. denied,* 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974). The Second Circuit based its holding on the fact that enforcement of the clause would interfere with the

§ 7 rights of the employees in the new facility. Because in *Sperry* the union sought to extend an existing agreement to employees in a new unit that it never represented, without a showing of majority status, the union's conduct would not have been lawful even under a valid "new stores" clause. *See* note 7 *supra.* Here the Local Unions do not seek to extend their collective bargaining agreements to the Pinole store. They seek only to ensure the continuation of trust fund contributions on behalf of transferred employees. This case is therefore different in all material respects from *Sperry.*

and other benefits to employees after they have left the bargaining unit. A provision requiring the continuance of trust fund contributions for transferred employees should be treated in a similar manner—as providing continuing benefits to employees who have left the bargaining unit—rather than as unlawfully according the union a right to represent those employees in the new bargaining unit.[13]

Unions are free to negotiate provisions designed to protect employees against involuntary transfer or against adverse consequences resulting from either voluntary or involuntary transfers. There is no reason in federal labor law or policy why employees may not be guaranteed that they will continue to receive *most* of the economic benefits they received prior to their transfer in the event that for any reason their work locale is changed. We recognize that there are some instances in which the affording of particular benefits might be unlawful, not because doing so constitutes a "sub rosa" effort to obtain representational rights, but for a wholly different reason. Benefits could not be continued or provided if doing so would create an irreconcilable conflict with, or adversely affect, the rights of the other employees in the unit to which the transfer is made. For instance, requiring super-se-

niority for transferred employees in the face of a collective bargaining agreement at their new unit that prohibited the granting of such seniority would be contrary to federal labor law. So, too, would a provision for continued representation by the transferred employees' former bargaining representative without a showing of majority status. *See* note 10 *supra*. However, these examples represent the exception to the rule.

Normally there is no conflict between the bargained-for rights of transferred employees and the rights of others in the unit to which they are transferred. There is no conflict for example with respect to the most important economic benefit—wages. The payment of wages to transferred employees at a higher, protected rate does not interfere with any rights of the other employees in the new unit. Collective bargaining agreements ordinarily set minimum wage rates, and do not prohibit payments in excess of the bargained-for levels. "Red circled" rates for employees who have been paid at a particular rate in the past are not unusual; nor are they thought to affect adversely the rights of other employees. As in the case of wages, there is also ordinarily no conflict with respect to most of the other economic benefits.[14]

---

**13.** Even if we concluded that this dispute implicated the representational rights of the transferred, or new, employees, that would not necessarily preclude the submission of this dispute to arbitration. In *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 265, 84 S.Ct. 401, 405, 11 L.Ed.2d 320 (1964), the Supreme Court held that arbitration may be compelled even if a dispute over the interpretation of a collective bargaining agreement has representational overtones. The Court in *Carey* concluded that a work assignment dispute under a collective bargaining agreement, which implicated representational issues concerning the jurisdiction of two unions, could be submitted to arbitration; the Court did so even though only one of the unions that allegedly represented the employees in question would be a party to the arbitration. The Court stated that:

> However the dispute be considered—whether one involving work assignment or one concerning representation—we see no barrier to use of the arbitration procedure. If it is a work assignment dispute, arbitration conveniently fills a gap and avoids the necessity of

a strike to bring the matter to the Board. *If it is a representation matter, resort to arbitration may have a pervasive, curative effect even though one union is not a party.*

*Id.* at 272, 84 S.Ct. at 409 (emphasis added). Noting that "arbitration may as a practical matter end the controversy or put into movement forces that will resolve it," the Court held that the dispute should be submitted to arbitration. *Id.* at 265, 84 S.Ct. at 406.

The same considerations would apply here. The mere *possibility* of a conflict between an arbitral award and selection of a bargaining representative should not preclude arbitration of a dispute. *See Carey*, 375 U.S. at 272, 84 S.Ct. at 409 (citing *Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)). In addition, an arbitrator's award could have the desired "pervasive, curative effect."

**14.** We note that employees still within the units represented by the Local Unions may also have legitimate interests that are served by a contract

Trust fund contributions may, however, pose particular problems in some instances—for instance, when there is already a bargained-for plan in effect at the new unit. Alpha Beta suggests that the continued making of contributions on behalf of the transferred employees after another union has been certified to represent employees at the Pinole store would interfere with the rights of the Pinole store employees. Implicit in this argument is the contention that a certified union has the right or obligation under federal labor law to bargain for a single health and welfare or other benefit plan covering all the employees in a bargaining unit, and that the fragmenting of employees into separate groups based on past employment history would have an adverse effect on the bargaining rights of the employees as a whole.[15] There may be some merit to this argument. However, we need not resolve the issue here.

No other bargaining representative has been certified at the Pinole store.[16] The arbitrator has not yet construed the disputed provision. In particular, he has not yet determined what its duration will be. An arbitrator could well find that the life of the provision is limited. He could, for ex-

ample, construe the provision as requiring the employer to make the trust fund contributions for a reasonable period of time—a period long enough to allow the transferred employees to make satisfactory arrangements for new benefits. Alternatively, he could construe the provision as requiring contributions until either the expiration of the collective bargaining agreement or the certification of a bargaining agent at the Pinole store, whichever occurs earlier. We do not suggest that either of the above constructions is correct; nor do we suggest that any other construction would be unlawful. However, we conclude that both constructions we have suggested would avoid any possible conflict that might arise upon certification of a bargaining representative at the Pinole store, and both constructions would, in all other respects as well, be lawful.[17]

Having determined that the disputed provision is susceptible to a lawful interpretation, we must leave it to the arbitrator to decide on its proper construction. Then, if his award conflicts with federal law, it is, of course, subject to invalidation.

We hold that the arbitrator could interpret the provision in a way consistent with

provision of the type in dispute here. For example, a requirement that an employer continue making contributions after a transfer may in some cases deter that employer from transferring employees out of a bargaining unit. In addition, the continued payment of contributions may help ensure the stability of trust funds that are the source of future benefits for employees who remain in the bargaining unit.

15. The considerations in a case when a union has been certified to represent a bargaining unit differ significantly from those in which the employees are unrepresented. In the former case, the benefit plan covers all employees in the particular bargaining unit and, frequently, all employees in similar bargaining units of employers in the same industry. In the latter case, there is, for all practical purposes, no bargaining unit, and either no benefits are provided to the employees or the benefits are provided unilaterally on an employer wide basis to those categories of employees the employer elects to cover.

16. In fact, an Administrative Law Judge (ALJ) held that Alpha Beta violated § 8(a)(1) of the LMRA by recognizing the Independent as the

bargaining agent for the Pinole store employees. In addition, the ALJ held that Alpha Beta violated: (1) §§ 8(a)(3) and 8(a)(1) by refusing to transfer employees from one store to the Pinole store in order to obtain contractual concessions from Local 1179; and (2) § 8(a)(1) "by refusing to disavow the antiunion petition ... which purported to revoke Local 1179's authorization cards signed by its Pinole store employees."

17. We also need not decide whether the agreement could lawfully require arbitration of this dispute after the certification of another union. *Compare ILWU Local 142 v. Land & Construction Co.*, 498 F.2d 201, 204–06 (9th Cir.1974) (allowing arbitration of a dispute after a new bargaining agent was certified upon finding that there was no "strong possibility that such arbitration would foster labor unrest"), *with Int'l Ass'n of Machinists v. Howmet Corp.*, 466 F.2d 1249, 1253–55 (9th Cir.1972) (refusing to submit a dispute to arbitration in similar circumstances after finding that dispute would tend to create labor unrest).

the Pinole store employees' section 7 rights. Because the parties agreed to arbitrate the dispute, and because there are lawful interpretations that an arbitrator could give the disputed clause, Alpha Beta was obligated to submit the dispute to arbitration.

## PROCEDURAL CHALLENGES TO THE PETITION TO COMPEL ARBITRATION

Alpha Beta also challenges the district court's order and memorandum on two procedural grounds. We reject both.

Alpha Beta alleges that, because the Local Unions failed to join parties that are necessary for just adjudication of this action under Fed.R.Civ.P. 19(a), the district court erred in failing to dismiss the action.[18] In particular, Alpha Beta claims that the district court should have ordered the Union Locals to join: (1) the employees who were transferred to the Pinole store; and (2) the Independent Alpha Beta Workers' Association (Independent), which Alpha Beta claims is the legitimate bargaining agent of the Pinole store employees.

We have emphasized that "[t]here is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a).... Rule 19 gives a trial court considerable discretion and requires that several conflicting interests be balanced on a case-by-case basis." *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982) (per curiam). Accordingly, we apply an abuse of discretion standard of review to the district court's decision concerning joinder of parties under Rule 19. *See id.*

■ Here, Alpha Beta has made no showing that either the transferred employees or the Independent are necessary parties for a just adjudication of this action under Rule 19(a).

First, complete relief (arbitration) can be granted in this action without joinder of any parties. *See* 550 F.Supp. at 1255. Moreover, assuming that they have any interests implicated in this action, we cannot see how the failure to join the transferred employees or the Independent will "as a practical matter" at all impair, or even affect, their ability to protect those interests. Finally, as the district court recognized, *see id.*, Alpha Beta has not demonstrated how granting a petition to compel arbitration of the dispute will subject it to a "substantial risk" of inconsistent obligations. Thus, the threshold definitional requirements for a necessary party under Rule 19(a) are not satisfied here.[18a]

■ Ordinarily, employees whose rights are the subject of an arbitration are not even parties to the arbitration itself. They are certainly not necessary parties to a proceeding in which the issue is only whether an arbitration should be conducted. *See Local No. 3-193 International Woodworkers v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1297 (9th Cir.1980); *Fibreboard Paper Products Corp. v. East Bay Union of Machinists, Local 1304*, 344 F.2d 300, 303 (9th Cir.), *cert. denied*, 382 U.S. 826, 86 S.Ct. 61, 15 L.Ed.2d 71 (1965). The Independent has not been certified as the representative of he employees at the Pinole store and has no legal status with respect to those employees. In some instances, a number of unions might be in the same position as the Independent is here; there might be three or four organizations seeking to represent the same bargaining unit. Without indicating any view as to whether a certified bargaining representative would

---

**18.** Fed.R.Civ.P. 19(a) provides, in relevant part, that:

A person ... shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made

a defendant, or, in a proper case, an involuntary plaintiff.

**18a.** Because we hold that the Independent and the transferred employees are not necessary parties under Rule 19(a), we need not decide whether "in equity and good conscience" the parties are indispensable under Rule 19(b). *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1041 (9th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983) (citing *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108–25, 88 S.Ct. 733, 737–46, 19 L.Ed.2d 936 (1968)); *see Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir.1982) (per curiam). Failure to join an indispensable party requires dismissal. *See id.*

be a necessary party,[19] we conclude that organizations that are only competitors for future representational rights do not become necessary parties to a proceeding simply because the actual rights of employees in the bargaining unit are at stake.

We cannot hold that the Local Unions must join 30 transferred employees and an organization that does not represent those employees. Rather, we must conclude that the Independent and the transferred employees are not necessary parties. *Cf. Kaiser v. Local No. 83*, 577 F.2d 642 (9th Cir.1978) (per curiam) (holding that employer is not an indispensable party in action brought by employee against union for breach of statutory duty of fair representation). The district court therefore did not abuse its discretion in denying the motion to dismiss under Fed.R.Civ.P. 19(a).

Second, because the summons served by the Local Unions did not comply with Fed.R.Civ.P. 4(b), Alpha Beta contends that the district court did not obtain personal jurisdiction over it. The summons stated that Alpha Beta had ten days to answer the complaint, rather than the twenty days provided for by Fed.R.Civ.P. 12(a). We agree with the district court that this claim is meritless.

 Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint. *See FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1312 & n. 61 (D.C.Cir.1980); 4 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1083, at 332–33 (1969). Even if the summons fails to name all of the defendants, *see Vega Matta v. Alvarez de Choudens*, 440 F.Supp. 246, 248–49 (D.P.R.1977), *aff'd without opinion*, 577 F.2d 722 (1st Cir.1978), or, as in the case before us, the summons specifies the incorrect time for filing of the answer, *see A.C. Samford, Inc. v. United States*, 226 F.Supp. 72, 75 (M.D.Ga.1963), dismissal is generally not justified absent a showing of prejudice, *see*

Fed.R.Civ.P. 61; *Newman v. Prior*, 518 F.2d 97, 99 (4th Cir.1975). For this reason, a defendant's answer and appearance in an action "should be enough to prevent any technical error in form from invalidating the process." 4 C. Wright, A. Miller, & M. Kane, *supra* § 1088, at 155 (Supp.1983); *see Maricopa County v. American Petrofina, Inc.*, 322 F.Supp. 467, 469–70 (N.D. Cal.1971).

 Alpha Beta answered the petition and argued its case before both the district court and this court. It failed to present any evidence suggesting that it was prejudiced in the least by the minor defect in the summons. Therefore, the district court was correct in holding that dismissal for insufficiency of process was not justified.

Accordingly, we affirm the district court's rulings that Alpha Beta's procedural objections do not warrant dismissal of the petition to compel arbitration.

## ATTORNEY'S FEES

 The Local Unions seek an award of attorney's fees for this appeal on the ground that Alpha Beta's appeal is without justification and interferes with the effectuation of federal labor policy. As we recently recognized in affirming a district court's award of attorney's fees against an employer who refused to comply with an arbitration award,

> [i]t is generally recognized that labor arbitration advances the goal of industrial stabilization.... Engaging in frivolous dilatory tactics not only denies the individual prompt redress, it threatens the goal of industrial peace. Therefore, the deterrence aspect of an award of attorneys' fees is particularly served where a party, without justification, refuses to abide by an arbitrator's award.

*International Union of Petroleum & Industrial Workers v. Western Industrial Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir.1983) (citation omitted); *see Interna-*

---

**19.** *Compare* note 17 *supra* (court may not order arbitration of a dispute under a collective bargaining agreement after a new bargaining agent has been certified if to do so would "foster labor unrest"), *with Carey v. Westinghouse Electric Co.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964) (court may order arbitration between

union and employer of a dispute under a collective bargaining agreement even if the dispute implicates the representational interests of a *non-party* union that is certified in another bargaining unit and has a collective bargaining agreement with the same employer), *discussed at* note 13 *supra*.

*tional Association of Machinists & Aerospace Workers, District 776 v. Texas Steel Co.,* 639 F.2d 279, 284 (5th Cir.1981). We believe that the policy concerns raised by frivolous or bad faith refusals to arbitrate or appeals of district court orders compelling arbitration are the same as those raised by frivolous or bad faith refusals to comply with an arbitration award. Accordingly, the award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration or appeals from an order compelling arbitration. However, although a number of Alpha Beta's arguments are "frivolous," its principal argument, that the disputed provision is unlawful, is not. We therefore hold that this appeal does not justify an award of fees under Fed.R.App.P. 38. *See Todd v. Benal Concrete Construction Co.,* 710 F.2d 581, 584 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); *International Union of Petroleum & Industrial Workers,* 707 F.2d at 430 (citing *McConnell v. Critchlow,* 661 F.2d 116, 118 (9th Cir.1981)).

### CONCLUSION

We conclude that the collective bargaining agreements provide for arbitration of the dispute and that an arbitrator could arrive at a construction of the disputed provision that would be consistent with federal labor law and policy. We therefore hold that the district court was correct in granting the petition to compel arbitration. We also hold that the district court did not err in denying Alpha Beta's motion to dismiss for failure to comply with Fed.R. Civ.P. 19(a) and Fed.R.Civ.P. 4(b). Finally, we hold that Alpha Beta's principal argument is not frivolous and accordingly do not grant appellees' request for attorney's fees on appeal. The district court's memorandum and order is

AFFIRMED.