INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ASBESTOS WORKERS' LOCAL NO. 27, Plaintiff,

v.

MASTER INSULATORS ASSOCIATION, INC., Defendant.

No. 86–0181–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Oct. 20, 1986.

John P. Hurley, Jolley Walsh Hager & Gordon, Kansas City, Mo., for plaintiff.

Jack L. Whitacre, Spencer Fane Britt & Browne, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDERS

JOHN W. OLIVER, Senior District Judge.

This case pends on plaintiff's motion for summary judgment and request for attorney's fees. Jurisdiction is based on 29 U.S.C. § 185. For the reasons set forth below, plaintiff's motion for summary judgment will be granted. Plaintiff's request for attorney's fees will be denied.

This Court has carefully examined the pleadings and supporting documents filed by the parties, and we find and conclude that there are no genuine issues of material fact in dispute which would preclude summary judgment. Fed.R.Civ.P. 56(c); *Severs v. Allied Construction Services, Inc.*, 795 F.2d 649, 650 (8th Cir.1986). This Court's inquiry, then, is limited to a determination of whether the collective bargaining agreement between the parties pro-

vides for arbitration of the dispute in question, and whether arbitration would be proper under the circumstances of this case.

## I.

The undisputed facts are as follows:

Defendant is an organization of employers who make and install insulating materials, primarily in the building and construction industry. (Complaint ¶ 3; Answer ¶ 1). The collective bargaining agreement at issue was "between the Master Insulators Association, Inc. of Kansas City, Missouri and vicinity (hereinafter called the 'Association') on behalf of its members (hereinafter called 'Employers') and the International Association of Heat and Frost Insulators and Asbestos Workers' Local No. 27 of Kansas City, Missouri (hereinafter called the 'Union')." (Complaint ¶ 5; Answer ¶ 1; Trade Agreement p. 1).

Insulcon, Inc. is an employer-member of the defendant. Plaintiff filed a grievance with the president of the defendant association on September 10, 1985 charging Insulcon with violating Article VII, Section 2 of the Trade Agreement [1] by performing work covered by the agreement under its affiliated corporation, Triad Construction Company. (Complaint, Exh. B). Plaintiff requested a meeting of the Trade Board to remedy the violations pursuant to Article V, Section 2 of the Trade Agreement. (Complaint, Exh. B).[2]

On September 13, 1985, three association members of the Trade Board informed plaintiff that they would refuse to meet on the Insulcon grievance "unless it is expressly understood that we are meeting only to hear the issues and further understood that we will not vote or render any decisions" because, "per advise [sic] of our respective corporate legal counsels," any "attempts to enforce any type of remedy by the Trade Board may constitute a violation of the National Labor Relations Act or of various state or federal anti-trust laws." (Complaint, Exh. C).

Sometime after September 13, 1986, several of the employer-members of the defendant serving as members of the Trade Board resigned their positions on that Board, leaving the status of the Trade Board as a viable entity seriously in doubt. (Complaint ¶ 9; Answer ¶ 2). By letter dated December 4, 1985, plaintiff requested that defendant allow the grievance to proceed directly to final and binding arbitration pursuant to Article V of the Agreement, bypassing the Trade Board hearing stage. (Complaint ¶ 10 and Exh. D; Answer ¶ 2). Plaintiff received no answer to its December 4, 1985 request for arbitration. (Complaint ¶ 11; Defendant's Further Response Brief p. 4).

Plaintiff filed this action on February 10, 1986 to enforce the grievance procedure it initiated pursuant to Article V of the collective bargaining agreement.

## II.

This Court's role is to enforce the collective bargaining agreement. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972

---

**1.** Article VII, Section 2 provides:

If and when the employer shall perform any work of the type covered by this Agreement, Under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, or stock holders, exercise either directly or indirectly, (such as family members), management, control or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

In the event that the conditions set forth in paragraph above are met but the agreement is not deemed applicable to the non-signatory entity, then the Employer shall be liable for all damages which shall include all hours of work performed outside the labor contract by employees of the other entity or company and shall include deterrent damages which may be awarded. All such damages shall be payable to the union for appropriate distribution to the non-union employees, including wages and fringe benefits, in a manner consistent with the law.

**2.** Article V of the Trade Agreement is attached to this memorandum and orders as Appendix A.

(1957). Whether the parties agreed to arbitrate a particular dispute is "a matter of contract." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Where the collective bargaining agreement provides a process for dispute resolution, as here, the "function of the court is very limited." *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960); *A T & T Technologies, Inc. v. Communications Workers of America,* —— U.S. ——, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The court must determine "whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Steelworkers v. America Mfg. Co.* at 568, 80 S.Ct. at 1346. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Steelworkers v. Warrior & Gulf Co., supra,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53. *See also Nolde Brothers, Inc. v. Local No. 358,* 430 U.S. 243, 250, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977) (contractual duty to arbitrate survives expiration of collective bargaining agreement).

■ The Association cannot avoid its obligations under the Trade Agreement through the unilateral refusal of some of its members to participate in Trade Board proceedings. The Trade Board has the "right to investigate labor operations of the Association member parties to this Agreement within its prescribed limits so far as any of the Provisions of this Agreement are involved, in connection with which any questions may arise." The Board also has the "power to impose fines, or other penalties ... when any of the Articles of this Agreement have been violated by either party to same." (Trade Agreement, Art. V).

One means of invoking the Trade Board powers is for either side to request, in writing, a special meeting of the Trade Board. Plaintiff properly made such a request. The Association's representatives refused to call a meeting of the Trade Board, and later resigned from the Trade Board, in effect dissolving the Board. The Association refused to agree to bypass the Trade Board step in the grievance procedure after it appeared that the Trade Board no longer existed. The Association refused to take the grievance to final and binding arbitration pursuant to Article V, section 7 of the Trade Agreement. *See* Complaint, Exh. D.

The Association members' refusal to call a meeting of the Trade Board prevented an interpretation of Article VII of the collective bargaining agreement by that body. Their refusal also prevented the implementation of the subsequent arbitration procedure which the parties had agreed to in the collective bargaining agreement should the Trade Board process break down.

■ Defendant argues that the complaint does not assert any grievance against the Association, and that it does not seek to compel the defendant to arbitrate a grievance against the defendant. Where the parties have agreed upon the means of dispute resolution in a collective bargaining agreement, this Court must follow federal policy and favor the resolution of a grievance by that procedure. *See United Mine Workers of America, District No. 2 v. Barnes & Tucker Co.,* 561 F.2d 1093, 1096 (3d Cir.1977) ("It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties.").

Defendant makes its argument primarily to refute plaintiff's allegations of bad faith on the part of the Association. (Defendant's Further Response Brief at 4). However, plaintiff has a right to arbitration under Article V of the Trade Agreement either by arbitrating directly with the employer-member of the Association, or by requesting Trade Board action at a special meeting. Under Article V, plaintiff can seek resolution of the alleged Insulcon violations through either procedure. Arbitra-

tion with the individual employer-member is not a necessary prerequisite to a specially requested Trade Board meeting on the alleged violations.

Plaintiff chose to seek a resolution to Insulcon's alleged violations through a procedure permitted by Article V of the collective bargaining agreement by requesting a meeting of the Trade Board. Should the Trade Board fail to agree upon the resolution of a matter brought before it, the agreement provides that "the matter in dispute" shall be submitted to arbitration. Such arbitration is "final and binding upon the Association, the Employer, and the Union." (Trade Agreement, Art. V). Where, as here, the Trade Board failed to meet, it certainly failed "to agree as a majority."

In the instant action, the alleged Insulcon violations of the Trade Agreement are "the matter in dispute" which the Trade Board must refer to arbitration. The defendant argues that the Association has no real interest in the alleged Insulcon grievance, therefore implying that the present action was improperly brought against the Association. However, the Association, by providing members to the Trade Board, is inevitably involved with and is bound by the arbitration of a dispute when the Trade Board process breaks down. Therefore plaintiff properly brought this action against the defendant.

### III.

Having determined that the collective bargaining agreement provides for arbitration, this Court must now determine whether arbitration of the alleged Insulcon violations is proper under the circumstances of this case. *See United Steelworkers of America v. American Mfg. Co., supra,* 363 U.S. at 567–68, 80 S.Ct. at 1346. Defendant argues that because the enforcement of Article VII of the contract could have "potential 'anti-competitive' connotations, the Association has chosen to take no role in the administration of the contract and has refused to become a party to any action which might be construed as the voluntary entering into [of] a conspiracy to eliminate competitive process or agreement." (De-

fendant's Response Brief at 2). Defendant contends that the employer-members of the Association who refused to participate in the Trade Board proceeding did so because of concern about possible anti-competitive consequences of interpreting Article VII.

The parties agree, and this Court concurs, that the standard set forth in *R.B. Electric, Inc. v. Local 569, International Brotherhood of Electrical Workers, AFL-CIO,* 781 F.2d 1440, 1442 (9th Cir.1986), governs this Court's determination of whether the Article VII dispute is arbitrable. In *R.B. Electric,* the Ninth Circuit held that "[w]hen a party seeks to avoid arbitration on the ground that a contract clause is illegal, a district court may grant relief if the contract clause 'on its face violates federal labor law or is contrary to federal labor policy,'" citing *United Food & Commercial Workers Union, Local 197 v. Alpha Beta Co.,* 736 F.2d 1371, 1376 (9th Cir.1984). That circuit further held "[w]e 'need only decide whether an arbitrator could interpret the disputed contract clause in a manner that would render it lawful. Only if all possible interpretations of the contract provision would result in a conflict [with federal labor law] would arbitration be precluded.' *Id.* at 1377." *R.B. Electric,* 1781 F.2d at 1442.

The *R.B. Electric* court found that a provision substantially the same as Article VII was arbitrable, and affirmed the district court's grant of summary judgment. That court determined that interpretation of the provision in question in the collective bargaining agreement should be allowed to go to the arbitrator for his "independent exercise of judgment in interpreting the contract" without interference by the Court. *Id.* at 1442.

The defendant directed this Court's attention to *D'Amico v. Painters District Council 51,* 120 LRRM 3473 (D.Md.1985), [Available on WESTLAW, DCTU database], which "clearly sets forth the statutory basis under which ... a clause [such as Article VII] could reasonably be held to violate Section 8(e) of the National Labor Relations Act." (Defendant's Further Re-

sponse Brief at 6). The *D'Amico* court, however, distinguished *R.B. Electric* because the issue in *R.B. Electric,* 119 LRRM 2821 (S.D.Cal.1985), was "whether the alleged violation of a work preservation clause in a labor agreement was arbitrable ... not, as here, whether the Regional Director of the Board has reasonable cause to believe a violation of the Act has occurred." *D'Amico,* 120 LRRM at 3479.

The *D'Amico* court did not suggest that *R.B. Electric* was wrongly decided, or that a work preservation clause was *per se* illegal. In fact, the *D'Amico* court distinguished *R.B. Electric* in such a way as to suggest that that district court's finding of plausible legality was proper: "There was no indication in *R.B. Electric,* contrary to the instant case, that the work preservation clause at issue was being used by the union as a method of 'bottom up' organizing of Paramount employees through a parent company of both entities." 120 LRRM at 3479.

■ Under the standard set forth in *R.B. Electric,* this Court must determine only that an arbitrator *could* interpret Article VII in a manner that would render it lawful. *R.B. Electric,* 781 F.2d at 1442. For example, as in *R.B. Electric,* the arbitrator could plausibly find that Triad Construction Company and Insulcon, Inc. are alter egos or a single employer. Defendant does not direct this Court's attention to any NLRB determination which would be inconsistent with such a finding by the arbitrator. This Court will not invade the province of the arbitrator by imposing on him any interpretation of Article VII that this Court might make. *See United Steelworkers of America, supra,* 363 U.S. at 568, 80 S.Ct. at 1346.

This Court therefore finds and concludes that Insulcon's alleged violations of Article VII as charged by the Union may be arbitrated.

### IV.

■ Plaintiff's request for attorney's fees will be denied. The Eighth Circuit has permitted the award of attorney's fees in labor cases where the losing party clearly acted in bad faith. *Actors' Equity Association v. American Dinner Theatre Institute,* 802 F.2d 1038, 1043 (8th Cir.1986). This Court finds and concludes that the defendant did not act in bad faith in refusing to take the alleged Insulcon violations to arbitration. The standard for awarding fees is that they should not be awarded unless the claim was " 'frivolous, unreasonable or groundless, or [where the party] continued to litigate after it clearly became so.' " *Id.* at 1042 (*citing Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)).

The Association apparently called a meeting of the Trade Board as requested by plaintiff in its letter of September 10, 1985. The individual members of the Trade Board refused to meet on the dispute on the advice of legal counsel. The Association will not be held accountable for fees for the individual members' refusal, particularly where that refusal was based on legal advice.

The issue of whether the alleged Insulcon violations of Article VII are arbitrable is not an easy question. Defendant's refusal to arbitrate does not reflect "bad faith", rather, it reflects the Association's attempt to comply with its plausible but erroneous reading of the law under the circumstances of this case. *Cf. Actors Equity, supra,* at 1044–45 (no finding of bad faith where defendant was pursuing novel legal argument regarding scope of arbitration clause).

Accordingly, it is

ORDERED (1) that plaintiff's motion for summary judgment should be and is hereby granted. It is further

ORDERED (2) that plaintiff's motion for attorney's fees should be and is hereby denied. It is further

ORDERED (3) that plaintiff shall submit a proposed form of judgment in compliance with this Court's Memorandum and Orders to the defendant for its approval. Plaintiff shall, within fifteen (15) days of the date of

this Order, present the proposed form of judgment, as approved, to the Court so that the Clerk may be directed to enter final judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

## APPENDIX A

### ARTICLE V

### Trade Board

### (Disputes & Grievances)

There shall be a Trade Board consisting of four (4) members of the Association and four (4) members of the Union, and it is hereby expressly agreed upon by the parties that the aforesaid Trade Board Association members must be employers in the Industry and the aforesaid Trade Board Union members must be members of the Union. Said Trade Board shall have the right to investigate labor operations of the Association member parties to this Agreement within its prescribed limits so far as any of the Provisions of this Agreement are involved, in connection with which any questions may arise, and for this purpose shall have the right to summon, question, and examine any Association member party to this Agreement, or their representative or agents.

Grievances of any employer (Association member or non-member firm) or the Union arising out of the interpretation and enforcement of this Agreement shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. An Association member employer may have an Association representative present, to act as its representative Grievances involving such Association members not settled as provided in this paragraph may be appealed by either party to the Trade Board.

Grievances involving non-member employers not settled as provided herein may be submitted directly to arbitration by either side giving written notice to the other, within five (5) Days of its desire to do so, at which point the parties will also attempt to mutually agree upon the selection of a neu-

tral arbitrator, or if unable to, to contact the FMCS to secure a panel of arbitrators in order to select the arbitrator to hear and determine the dispute. The decision of the arbitrator shall be final and binding.

Trade disputes or grievances shall be settled without cessation of work, and in the cases where the association member parties to this Agreement fail to agree, the matter in dispute shall be referred to the Joint Trade Board. In case any dispute arises, notice must be given in writing to the Secretary of the Trade Board by the aggrieved Association party or parties within ten (10) days.

The Trade Board shall be governed by the following By-Laws:

1. Regular meetings shall be held quarterly the first Monday in January, April, July, and October.

2. Special meetings shall be called within forty-eight (48) hours by the Chairman of the Trade on written request of either side stating object for which meeting is to be called, but no matter shall be discussed at special meetings except those designated in said written request.

3. Six (6) shall constitute a quorum, three (3) from each side; neither shall cast more ballots than the other.

4. The vote on all questions of violations of this AGREEMENT shall be by secret ballot.

5. It shall require a simple majority vote to carry any question.

6. The Trade Board shall have the power to impose fines, or other penalties where agreed by vote, as above provided for, when any of the Articles of this Agreement have been violated by either party to same.

Such fines or penalties shall be imposed against the party of the first part of the second part, as the case may be, and the Trade Board shall see that any fines or penalties so imposed are satisfied and the charitable disposition of moneys so collected shall be decided by the Trade Board.

7. In the event the Trade Board is unable to agree as a majority on any matters

which may arise, the matter in dispute shall be submitted to a neutral person chosen by four (4) or more of the Trade Board members.

If the Trade Board members are unable to agree upon the selection of a neutral person to determine the matter in question, then any Association Trade Board member upon five (5) days' written notice to the Union, or any Union Trade Board member upon five days' written notice to the Association may request the Director of the Federal Mediation and Conciliation Service to furnish a list of names from which a neutral person may be settled by the parties, each striking an equal number of names.

The decision of the Arbitrator shall be final and binding upon the Association, the Employer and the Union.

The arbitrator shall be paid by the parties hereto. The compensation and expenses of the arbitrator and the arbitration shall be divided equally provided that each party shall bear the expenses in respect to its own witnesses and that the cost of any report or transcript shall be divided equally if furnished by mutual consent.