**SOHIO PETROLEUM CO., a division of Sohio Natural Resources Co., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–3628.

United States Court of Appeals, Ninth Circuit.

June 6, 1980.

Rehearing Denied Aug. 28, 1980.

E. Carl Uehlein, Jr., Morgan, Lewis & Bockius, Washington, D. C., for petitioner.

Allison W. Brown, Jr., N. L. R. B., Washington, D. C., for respondent.

PETITION TO REVIEW A DECISION AND ORDER OF THE NATIONAL LABOR RELATIONS BOARD.

Before TANG and FARRIS, Circuit Judges and BEEKS *, District Judge.

* Honorable William T. Beeks, Senior District Judge for the Western District of Washington.

FARRIS, Circuit Judge:

Sohio petitions this court to review a decision and order of the National Labor Relations Board requiring Sohio to bargain with the International Union of Operating Engineers, Local 302. Sohio contends that the Board should not have certified the IUOE as the bargaining representative of its central power station employees because (1) the employees did not constitute a proper bargaining unit, and (2) the procedures followed by the Board in the representation election were improper. We disagree and enforce the Board's order.

Sohio produces oil for itself and other leaseholders on the Prudhoe Bay oil field for Alaska's North Slope. Twenty-two of Sohio's approximately three hundred North Slope employees staff the central power station which produces electricity for Sohio and ARCO, the other major oil producer on the North Slope. On October 22, 1976, the International Brotherhood of Electrical Workers, Local 1547, filed a petition with the NLRB seeking to represent Sohio's central power station employees. Eleven days later the North Slope Employees Association petitioned to represent all of Sohio's employees. The International Union of Operating Engineers intervened in both petitions.

The NLRB concluded that Sohio's employees could be properly divided into two bargaining units, one consisting of the central power station employees and the other composed of all other employees. In August, 1977, a representation election was held for the power station employees in which IUOE received 9 votes, IBEW—7 votes, NSEA—0 votes, and "no union"—8 votes. In September, 1977, the remainder of Sohio's employees voted 165 to 26 against union representation. In February, 1978, a second election was held for the power station employees. In this election, IUOE received 9 votes, IBEW—1 vote, and "no union"—10 votes. Finally, a run-off election was held in April, 1978 between IUOE and "no union" in which IUOE received 14 votes and 5 voted for "no union." As a result of this election, the Board certified IUOE as the bargaining representative of the power station employees.

In May, 1978, Sohio refused to bargain with IUOE, and the union filed an unfair labor practice charge with the NLRB alleging that Sohio's action violated Sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158–(a)(5) and (1). The Board agreed with the union and ordered the company to bargain collectively with IUOE. The company now contends that the Board's order should not be enforced because (1) the power station employees did not comprise an appropriate bargaining unit, and (2) the Board's election procedures were improper.

## THE BARGAINING UNIT

Because the issue of bargaining unit determination is within the particular expertise of the NLRB, we will not disturb a decision of the Board unless there has been an abuse of discretion. *Beck Corp. v. NLRB*, 590 F.2d 290, 292 (9th Cir. 1978). The critical consideration in determining the appropriateness of a bargaining unit is whether the employees in the unit share a "community of interest." *See Chemical Workers Local 1 v. Pittsburgh Glass*, 404 U.S. 157, 172–73, 92 S.Ct. 383, 393–94, 30 L.Ed.2d 341 (1971). The issue is whether the Board could reasonably find that the central power station employees shared the requisite "community of interest."

In determining whether the interests shared by a group of employees are sufficient for them to constitute a separate collective bargaining unit, the NLRB considers whether the employees (1) are a distinct, identifiable group, (2) share similar skills, (3) have separate supervision, (4) are transferred to other employee groups, and (5) share similar wages and hours. *Beck Corp. v. NLRB*, 590 F.2d 290, 293 (9th Cir. 1978); *see also NLRB v. Don Burgess Const. Corp.*, 596 F.2d 378 (9th Cir.), *cert. denied*, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979). Here, Sohio contends that because all its workers earn the same wages and benefits, live and eat in the same facilities, fly in and out of Prudhoe Bay on

the same airplanes, and work the same schedule, it was arbitrary for the Board to recognize the power station employees as a separate bargaining unit. We disagree.

The Board concluded that the power station employees share a "community of interest" because they are not directly involved in the production of oil but act instead as a "*de facto* public utility" supplying power to both Sohio and ARCO. The Board noted that the power facility has its own complex of buildings and its own separate supervision. Also, the power station employees generally have prior experience in powerhouse work, and they are never temporarily exchanged for Sohio's other North Slope employees. Nevertheless, there is support for Sohio's position that due to the remoteness of its North Slope operation, one company wide bargaining unit might best serve the needs of both Sohio and its employees. The NLRB is not, however, required to pick the most appropriate unit, and its determination will be upheld unless the bargaining unit is clearly inappropriate. *NLRB v. Local 588, Retail Clerks International Ass'n*, 587 F.2d 984 (9th Cir. 1978). Because there is evidence in the record to support the Board's finding that the power station employees share a "community of interest," we cannot say that a bargaining unit composed of only those employees is clearly inappropriate.

### THE ELECTION

■ The Board held three elections for the central power station unit before the IUOE was certified as the employees' bargaining representative. Sohio claims that the election procedure was invalid for three reasons. First, because IUOE originally stated it was not interested in representing the central power station employee unit, it should have been barred from the election. Second, the Board should have ordered a two choice run-off between "no union" and IUOE after the first election. Third, the Board should have certified the results of the second election.

Sohio contends that because it relied on IUOE's initial statements, disclaiming an interest in the small central power station unit, the company did not offer evidence that IUOE is not qualified to represent its power station employees. Sohio's claim of prejudice lacks merit. IUOE timely petitioned to appear on the ballot. At the time of the petition, Sohio made no showing that IUOE's appearance on the ballot would be prejudicial. Sohio has not presented any evidence indicating that the IUOE is unqualified to represent its power station workers.

■ Sohio next argues that because the second election had three choices on the ballot, it violated Section 9(c)(3) of the National Labor Relations Act, 29 U.S.C. § 159(c)(3), which states that a run-off election ballot shall offer "a selection between the two choices receiving the largest and [the] second largest number of valid votes cast in the election." The Board notes, however, that the first election was only a referendum on the question of separate representation for the central power station. After this election indicated that the employees favored a separate unit, the Board ordered a second election to determine which union would be the employees' bargaining representative. The second election was not a run-off, and the Board properly permitted more than two choices on the ballot.

■ Sohio's final contention is that the results of the second election should have been certified under 29 C.F.R. § 102.70(d) which requires that the Board certify any election in which "two or more choices receive the same number of ballots and another choice receives no ballots and there are no challenged ballots . . . and . . all eligible voters have cast valid ballots . . . ." Sohio argues that if the nine votes received by IUOE were added to IBEW's one vote, there would be a tie with the ten "no union" votes and 29 C.F.R. § 102.70(d) should apply. This suggested procedure, however, has no support in the regulations.

The Board's order is enforced.