19 F.3d 28
 148 L.R.R.M. (BNA) 2320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
FLAMINGO HILTON-LAUGHLIN, INC., Respondent.
 No. 92-70530.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 13, 1994.*
Decided Feb. 16, 1994.
 
 1
 Before: SCHROEDER and NOONAN, Circuit Judges, and JONES,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Flamingo Hilton-Laughlin, Inc. refuses to bargain with the representative of a group of employees in the Hotel's property operations department. The Hotel contends that the employees have been improperly certified as a bargaining unit by the National Labor Relations Board. Upon petition by the employees' representative, the NLRB ruled that the Hotel's refusal to bargain was an unfair labor practice, and it ordered the Hotel to bargain. The NLRB seeks enforcement of its order in this court. The only defense offered by the Hotel is its contention that the bargaining unit, as certified by the Board, was improper.
 
 
 4
 With certain statutory exceptions, the Board is authorized to certify bargaining units as necessary "to assure to employees the fullest freedom in exercising the rights guaranteed by [the Act]." Id. Sec. 159(b). This court's review of NLRB certification decisions is highly deferential: "Congress has entrusted unit determinations to the special expertise of the NLRB. Determining the proper scope of bargaining units 'involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed.' " NLRB v. French Int'l Corp., 999 F.2d 1409, 1409 (9th Cir.1993) (citing cases). "The Board need not 'choose the most appropriate bargaining unit; it is sufficient if the unit chosen is within the range of units appropriate under the circumstances.' " Id. This court's review "is limited to the determination of whether the NLRB has abused its discretion." Id.
 
 I.
 
 5
 The Hotel argues that certain hotel employees should not have been included in the bargaining unit that was certified by the Board. These employees are the property operations department's locksmiths, relief supervisors, warehouse employee, and secretary/dispatchers. The Hotel contends that the locksmiths and relief supervisors are precluded by statute from inclusion in a unit with other hotel division employees, and that the secretary/dispatchers and the warehouse employee do not share a sufficient interest with the other property operations employees to be included in the unit certified.
 
 A. Locksmiths
 
 6
 Pursuant to 29 U.S.C. Sec. 159(b), the Board may not include "guards" in any unit containing non-guard employees. A statutory guard is "any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises." Id. The Hotel contends that two locksmiths employed in the property operations department are statutory guards and should not have been included in the bargaining unit certified by the Board.
 
 
 7
 The guard provisions are intended to prevent inclusion of employees charged with enforcing an employer's security rules and protecting the employer's property in a unit with other employees who are subject to the employer's rules. See McDonnell Aircraft Co. v. NLRB, 827 F.2d 324, 326 (8th Cir.1987); Wells Fargo Armored Service Corp., 270 N.L.R.B. 787, 788-89 (1984), review dismissed, 755 F.2d 5 (2d Cir.), cert. denied, 474 U.S. 901 (1985). Congress sought to ensure that guards would not have conflicting loyalties between their employer and their fellow union members when called upon to enforce the employer's policies. Wells Fargo, 270 N.L.R.B. at 789.
 
 
 8
 The Hotel contends that the locksmiths are potentially subject to divided loyalties because of their responsibility for safeguarding the property of the Hotel's guests. The Hotel notes that the locksmiths safeguard the keys to all of the Hotel's guest rooms. Furthermore, when a guest reports stolen property, a locksmith will "interrogate" the computer lock on the door of the guest's room to determine the serial numbers of all of the keys that have been used to open the lock. The Hotel argues that because interrogation of the locks may lead to discipline of other hotel employees, locksmiths may encounter divided loyalties if included in the bargaining unit.
 
 
 9
 Although they read the memory of guest room locks, the locksmiths perform no other discretionary function with respect to investigating or disciplining other hotel employees. All implementation of discipline is left to management and security. Accordingly, the possibility for divided loyalties appears minimal and tenuous at best. The Board previously has permitted certification of a union including hotel locksmiths and other hotel employees. Hilton Hotel Corp., 287 N.L.R.B. 359, 359 n. 2, 366 (1987). We cannot conclude that the Board has erred in including locksmiths.
 
 B. Relief Supervisors
 
 10
 The Hotel contends that its relief supervisors are statutory "supervisors," and may not be included in a bargaining unit with nonsupervisory employees.[1] 29 U.S.C. Sec. 152(3). A statutory supervisor is "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action...." Id. Sec. 152(11).
 
 
 11
 The property operations relief supervisors spend three days a week as regular nonsupervisory employees within the department. Two days a week, the employees spend 25 to 30 percent of the day as relief supervisors. Finding that the relief supervisors "do not perform job evaluations, interview prospective applicants, or take part in scheduling or prioritizing work," the Board included them in the bargaining unit.
 
 
 12
 The Hotel argues that the Board's determination that its relief supervisors are not statutory supervisors is in tension with the Board's prior decisions. In prior decisions, the Board has shown concern as to whether relief supervisors assume supervisory duties on a "regular" basis as opposed to an ad hoc, or "sporadic" basis. Compare In re Jackel Motors, Inc., 288 N.L.R.B. 730 (1988), enforced, 875 F.2d 644 (7th Cir.1989) with N & T Assocs., Inc. d/b/a Aladdin Hotel, 270 N.L.R.B. 838 (1984). The hotel's relief supervisors appear to assume their "supervisory" role on a nonsporadic basis.
 
 
 13
 But even if the relief supervisors serve with regularity, the Board expressly found that when they relieve shift supervisors, the relief supervisors do not actually perform supervisory duties. The Board's finding is well supported by the record, and we find that the Hotel has not met its burden of showing that these employees are statutory supervisors, Walla-Walla Union Bulletin, Inc. v. NLRB, 631 F.2d 609, 613 (9th Cir.1980), notwithstanding the apparent regularity of their service.
 
 C. The Warehouse Employee
 
 14
 The Board found that the warehouse person, as caretaker of the property operation department's warehouse and tools, shares a community of interest with the other property operations employees and should be included in the unit. Important to the Board's determination was the fact that the warehouse employee is located in the property operations portion of the hotel and has frequent contact with the other property operations employees. The Hotel argues that the warehouse employee, unlike the other property operations employees, is not directly responsible for maintaining the hotel. Despite the unique nature of the warehouse employee's task, her principal duty is to help the other property operations employees in their mission to keep the Hotel in good repair. The Board's decision is neither unreasonable nor inconsistent with its other decisions. See John N. Hansen Co., 293 N.L.R.B. 63, 64-65 (1989).
 
 D. Secretary/Dispatchers
 
 15
 The secretary/dispatchers work in shifts and bear the responsibility of filling out "trip tickets" and work orders when a guest or another employee indicates that something in the hotel is in need of repair. The Board's finding that the secretary/dispatchers share a community of interest with the other property operations employees is reasonable. The Board found the secretary/dispatchers to be part of the property operations department because they sit in the property operations area of the hotel,[2] because they are under the supervision of property operations supervisors, and because they interact primarily with property operations employees. These factors align the secretary/dispatchers with the other property operations employees, and distinguish them from the other hotel division employees. Inclusion of these employees in the maintenance unit is neither inconsistent with prior NLRB decisions, Hansen, 293 N.L.R.B. 63, nor an abuse of discretion.
 
 II.
 
 16
 The Hotel contends that regardless of whether certain employees should have been included in the unit, the Board erred in certifying a unit of property operations employees only. The Hotel contends that the only appropriate unit is one comprised of all hotel division employees. The issue is whether the Board erred in determining that the property operations department was sufficiently discrete from the rest of the hotel division to require an independent bargaining unit. See French, 999 F.2d at 1410-11.
 
 
 17
 The factors employed by the NLRB, and by a reviewing court, to determine whether there is a community of interest include "whether the employees (1) are a distinct, identifiable group; (2) share similar skills; (3) have separate supervision; (4) are transferred to other employee groups; and (5) share similar wages and hours." Sohio Petroleum Co. v. NLRB, 625 F.2d 223 (9th Cir.1980) (citing Beck Corp. v. NLRB, 590 F.2d 290, 293 (9th Cir.1978)); see Western Lodging Corp., d/b/a Stanford Park Hotel, 287 N.L.R.B. 1291 (1988).
 
 
 18
 As the Board noted, property operations department employees have a distinct task that is separate from the duties of all of the other hotel division employees; they maintain and fix things.[3] They respond to "trip tickets" and work orders issued by a secretary/dispatcher as problems in the hotel are reported by other employees or guests. The property operations department has its own separate space in the hotel, its employees generally receive higher wages than the other hotel employees, and they have their own supervisory structure. Transfers in and out of property operations to other hotel divisions are rare. All of these factors support a finding that a unit of property operations department employees only is appropriate. See French, 999 F.2d at 1409-11; Stanford Park Hotel, 287 N.L.R.B. at 1291-92.
 
 
 19
 The Hotel contends that in reaching its decision, the Board ignored the fact that the Hotel's workforce is "highly integrated" due to the "unique characteristics of the Laughlin casino market." Resp.'s Brf. 41-48. By "highly integrated," the Hotel apparently means that because Laughlin Hotels are leanly staffed, there is frequent contact between property operations employees and other hotel division employees. Close communication among the different departments at the hotel is insufficient to reverse an NLRB decision to certify a discrete bargaining unit within a hotel. French, 999 F.2d at 1411 (Board's community of interest determination upheld notwithstanding the fact that employees of different divisions occasionally share duties ); Stanford Park Hotel, 287 N.L.R.B. at 1291-92.
 
 
 20
 The Hotel also contends that the property operations employees share a community of interest with the other hotel division employees because all hotel employees are paid hourly, receive the same benefits, wear similar uniforms, share common cafeteria facilities, and are subject to similar policies. The record establishes, however, that property operations employees are generally paid more and have a separate supervisory structure. Moreover, "the fact that all hotel employees receive the same fringe benefits and are subject to the same personnel policies" is not dispositive. Stanford Park Hotel, 287 N.L.R.B. at 1292. These factors, although relevant to whether the entire hotel division might be an appropriate unit, do not establish that the unit certified is not also an appropriate unit. Id. As noted above, the task of this court is only to determine whether the unit certified is acceptable, not whether it is the best possible unit. French, 999 F.2d at 1409 (citing Beck Corp. v. NLRB, 590 F.2d 290, 292 (9th Cir.1978)).
 
 
 21
 The order of the Board is ENFORCED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Board excluded from the unit several full-time supervisors in the property operations department
 
 
 [2]
 The Hotel contends that the secretary/dispatchers do not, in fact, share space with the rest of the property operations department. The Board's factual finding to the contrary is supported by the record and does not appear to be clearly erroneous
 
 
 [3]
 Or, in the Hotel's words, they are "responsible for maintaining mechanical, structural, and life safety systems, and making a guest's stay comfortable and pleasurable." Resp.'s Brf. 5